COPY

1  HELANE L. MORRISON (Cal. Bar No. 127752)
2  SUSAN F. LaMARCA (Cal. Bar No. 215231)
     (lamarcas@sec.gov)
3  SHEILA E. O'CALLAGHAN (Cal. Bar No. 131032)
     (ocallaghans@sec.gov)
4  ELENA RO (Cal. Bar No. 197308)
     (roe@sec.gov)
5
6  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
7  44 Montgomery Street, Suite 2600
   San Francisco, California 94104
8  Telephone:  (415) 705-2500
   Facsimile:  (415) 705-2501

ORIGINAL FILED

SEP 2 7 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

9
10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                   C  06  6003  CW

13  SECURITIES AND EXCHANGE COMMISSION,        Case No. _____

14                  Plaintiff,

15          vs.                                COMPLAINT

16  THE CHILDREN'S INTERNET, INC., NASSER V.
    HAMEDANI, SHOLEH A. HAMEDANI, PETER A.
17  PEREZ, CORT L. POYNER, and TWO DOG NET,
    INC.,
18
                    Defendants.
19

20

21          Plaintiff Securities and Exchange Commission (the "Commission") alleges:

22                      SUMMARY OF THE ACTION

23          1.      This matter arises out of a scheme by Nasser V. Hamedani and Sholeh A. Hamedani,

24  father and daughter, to obtain money from investors through fraudulent sales of securities of a

25  company they controlled, The Children's Internet, Inc. ("TCI"), based in Pleasanton, California.

26          2.      From about February 2002 through June 2005, Nasser and Sholeh Hamedani,

27  purportedly on behalf of TCI, fraudulently obtained approximately $5.5 million from public

28  investors.  The defendants began selling TCI shares to the public long before TCI even existed and

1  long before any of the defendants had any means of delivering shares they promised to investors.

2      3.      Even after TCI was formed and without telling investors, Nasser and Sholeh

3  Hamedani diverted a significant amount of the investors' money, which was supposed to fund the

4  company, to pay personal expenses, such as purchasing a family home they shared, purchasing

5  automobiles, and paying off gambling debts.  They also diverted money obtained from TCI investors

6  to another company they controlled, Two Dog Net, Inc., and further used the investor funds to pay

7  hundreds of thousands of dollars in undisclosed commissions to two stock promoters, defendants

8  Peter Perez and Cort Poyner.

9      4.      Once a public market in TCI's shares began trading in 2005, defendants Nasser and

10  Sholeh Hamedani dumped TCI shares that they controlled, further enriching themselves, while

11  preventing TCI's public investors from receiving share certificates they needed in order to sell their

12  securities.

13      5.      By engaging in the acts alleged in this Complaint, the defendants, among other things,

14  violated the antifraud and registration provisions of the federal securities laws, and caused TCI to

15  make false filings with the Commission.  The Commission seeks an order enjoining defendants from

16  future violations of the securities laws, requiring them to disgorge ill-gotten gains with prejudgment

17  interest, and to pay civil monetary penalties, barring Nasser Hamedani and Sholeh Hamedani from

18  serving as officers or directors of a public company, barring each of the individual defendants from

19  participating in any offering of penny stock, and providing other appropriate relief.

20                  **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

21      6.      This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the

22  Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e),

23  and 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e),

24  and 78aa].

25      7.      The defendants, directly or indirectly, have made use of the means and

26  instrumentalities of interstate commerce or of the mails in connection with the acts, transactions,

27  practices and courses of business alleged in this Complaint.

28

8.     Venue is proper in this district pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because acts, transactions, practices, and courses of business constituting violations alleged in this Complaint occurred within the Northern District of California, and four of the six defendants can be found in this district.

## DEFENDANTS

9.     Defendant The Children's Internet, Inc. is a Nevada corporation incorporated in 1996, when it was then known as DWC Installations, Inc.  In 2002, when defendants Nasser and Sholeh Hamedani gained control of the company, the name was changed to TCI, and it began operating out of an office in San Ramon, California, which was later moved to Pleasanton, California. TCI has a class of common stock registered with the Commission pursuant to Section 12(g) of the Exchange Act, and since around February 2005, TCI's common stock has been quoted on the OTC Bulletin Board and the Pink Sheets.  Beginning in around March 2006, TCI first began selling its product, which was an internet website for children, which could be accessed by paying a subscription fee to TCI.  Until then, TCI did not actually sell any products or services.

10.     Defendant Two Dog Net, Inc. ("Two Dog Net") is a Utah corporation, incorporated in or around July 1983.  Two Dog Net operates out of the same office that TCI occupies in Pleasanton, California.  Two Dog Net is also controlled by Nasser and Sholeh Hamedani.  Two Dog Net was described in TCI's filings as engaged in the development of the product that TCI eventually sold.

11.     Defendant Nasser V. Hamedani, age 68, resides in Danville, California.  From approximately May 1997 to the present, Nasser Hamedani has been the chief executive officer of Two Dog Net, Inc.  From approximately July 2002 through at least June 2005, Nasser Hamedani effectively controlled TCI along with his daughter, Sholeh Hamedani, although not disclosed as an officer of TCI in the company's public filings.

12.     Defendant Sholeh A. Hamedani, 39, resides in Danville, California.  From approximately August 2002 until the present, Sholeh Hamedani has been TCI's chief executive officer, chief financial officer, and the chair of its board of directors.  She also served as TCI's president until approximately January 2006, when she resigned from that position.  From approximately July 1995 until August 2002, she was also the president of Two Dog Net.

13.     Defendant Peter A. Perez, age 40, resides in Boca Raton, Florida.  From approximately February 2002 through approximately December 2004, he was retained by Nasser and Sholeh Hamedani to solicit investors for TCI in exchange for commissions of up to 25 percent of each investment.

14.     Defendant Cort L. Poyner, age 37, resides in Delray Beach, Florida.  From approximately February 2002 through September 2002, he was retained by Nasser and Sholeh Hamedani to solicit investors for TCI in exchange for commissions of up to 25 percent of each investment.

**FACTS**

**A.     <u>Defendants Gain Control of a Shell Company, Renaming It "The Children's Internet"</u>**

15.     In early 2002, Nasser and Sholeh Hamedani set into motion a plan to take over a shell company and to sell stock to the public.  To facilitate this plan, Nasser and Sholeh Hamedani created a California corporation called Shadrack Films, Inc. ("Shadrack") – an entity with no business operations – for the sole purpose of acquiring the stock of a shell company.  Sholeh Hamedani is Shadrack's sole officer, director, and shareholder.

16.     In or around July 2002, Nasser and Sholeh Hamedani gained control, through Shadrack Films, of a publicly reporting shell company – that is, a company with no assets or ongoing business but which had issued common stock that was registered with the Commission.  They gained control of the shell company, which was then named DWC Installations, Inc. ("DWC"), by using their company, Shadrack Films, to acquire 51 percent of DWC's stock for approximately $150,000.  However, there was no public market for the trading of DWC's securities, which DWC reported were owned by a total of 25 persons.

17.     In or around August 2002, exercising their control over DWC, Sholeh and Nasser Hamedani named Sholeh Hamedani as DWC's sole officer.  They also designated Sholeh Hamedani, another family member, and four other close associates of Nasser Hamedani, as DWC's new six-member board of directors.

18.     In or around October 2002, Nasser and Sholeh Hamedani completed the acquisition of almost all of the remaining shares of DWC's stock.  They arranged for the acquisition of

approximately 49 percent of the issued and outstanding shares of DWC by Nasser Hamedani, and by five other family members and friends they selected whom they referred to as the "Nominees."

19.     The transaction by the Nominees was structured to make it appear that persons unaffiliated with DWC purchased the stock.  In reality, the Nominees were under the control of Nasser Hamedani.  After October 2002, Nasser and Sholeh Hamedani controlled, in part through their control over the Nominees' shares, more than 99 percent of DWC's outstanding stock.

20.     From in or around September through November 2002, DWC entered into agreements with another company that Nasser and Sholeh Hamedani controlled, Two Dog Net, Inc., to permit TCI to sell their internet product for children that Two Dog Net was then developing.  In exchange, Two Dog Net was promised a license payment of at least $2 million to be paid within approximately two years.

21.     By approximately December 2002, Nasser and Sholeh Hamedani changed the name of the shell company from DWC to The Children's Internet, Inc.  The company stated in public filings that the name was changed to reflect the name of the internet product for children that the company intended to sell.  TCI did not release their eponymous product for sale to the public until March 2006.

**B.     Defendants Induce Investments in TCI Through Misrepresentations and Omissions**

22.     Nasser and Sholeh Hamedani began their fraudulent campaign of offering and selling TCI shares to the public months before TCI even existed.  Thus, no later than February 2002, Nasser Hamedani engaged two Florida-based stock promoters – defendants Peter Perez and Cort Poyner – to find prospective investors for TCI.  Neither Perez nor Poyner were then affiliated with any Commission-registered broker or dealer.

23.     Beginning on or about February 25, 2002, Nasser and Sholeh Hamedani, and Perez and Poyner, began offering for sale and purported to "sell" to investors shares of TCI, although they did not yet own any interest in the shell company nor have any means of immediately delivering the shares.

24.     By the time the Hamedanis made their first acquisition of any shares of the shell company in July 2002, Nasser and Sholeh Hamedani, and Perez and Poyner had together already "sold" more than 350,000 shares of TCI, for $2.00 per share, to more than 40 persons.  However,

1   Nasser and Sholeh Hamedani, and Poyner and Perez failed to disclose to those investors that they

2   were selling something they did not even own or have the present ability to deliver.  (See Appendix

3   setting forth transactions.)

4        25.      Defendants continued in their fraudulent solicitations of investors, both before and

5   after acquiring control of TCI.  Thus, from approximately February 2002 through approximately

6   December 2004, Nasser and Sholeh Hamedani and Perez together induced more than 200 persons to

7   make investments, purportedly in TCI, by telling them that the shares they were purchasing were

8   "free-trading" or "freely tradeable."  These representations were not true, because:  at least until

9   approximately August 2002, the defendants did not have any means to deliver shares in TCI to

10  investors; at least until approximately February 2005, there was no public market for TCI's shares;

11  and from approximately February 2002 through December 2004, the defendants did not in fact

12  deliver shares to investors until months or years after the investors paid for their shares, further

13  preventing investors from "trading" such shares.  (See Appendix A setting forth transactions.)

14       26.      From approximately February 2002 through September 2002, Poyner made similar

15  misrepresentations, falsely telling prospective investors that TCI's shares would soon be traded

16  through a public market and that the investors' shares would be freely tradeable, although he had no

17  factual bases for these representations.  (See Appendix A setting forth transactions.)

18       27.      Also, from approximately February 2002 through December 2005, in offering and

19  selling shares of TCI to investors, Nasser and Sholeh Hamedani and Perez failed to disclose the fact

20  that Perez was paid commissions of up to 25 percent of the value of each investment he brokered.  In

21  addition, from approximately February 2002 through September 2002, Nasser and Sholeh Hamedani

22  and Poyner, similarly failed to disclose to investors that Poyner was paid commissions of up to 25

23  percent of the value of each investment he brokered.

24       28.      Perez and Poyner made further misrepresentations to certain persons to induce them to

25  make investments in TCI, from approximately February 2002 through September 2002, stating,

26  among other things, that the investors would double their money when TCI began trading in a

27  national securities market, and that TCI's share would more than double, although they had no factual

28  basis for this representation.

29.     From February 2002 through January 2005, Nasser and Sholeh Hamedani made further misrepresentations and omissions of fact to persons to induce them to invest by falsely representing, among other things, that the proceeds from the investments would be used to fund TCI, while failing to inform investors that a significant part of the proceeds the investments were used by Nasser and Sholeh Hamedani to pay for their personal expenses and for other expenses unrelated to TCI's operations.

30.     The individual defendants' misrepresentations and omissions of fact regarding investors' ability to "freely trade" TCI securities and the uses of proceeds from the investments, including undisclosed commissions paid to Perez and Poyner, were material in that they were made (or omitted) to induce persons to purchase securities.

31.     Defendants Nasser and Sholeh Hamedani, and Perez and Poyner, all knew, or were reckless in not knowing, that their representations about the investors' ability to "freely trade" TCI securities were not true and were misleading to investors.   Defendants Nasser and Sholeh Hamedani, and Perez and Poyner, also all knew, or were reckless in not knowing, that their representations and omissions about the uses of the proceeds from the investments, including the undisclosed commissions paid to Perez and Poyner, were false and misleading to investors.

**C.     Defendants Nasser and Sholeh Hamedani Enrich Themselves Using Investor Funds**

32.     Altogether, defendants Nasser and Sholeh Hamedani received from their fraud approximately $5.5 million, at the expense of the public purchasers of TCI's shares.  The initial influx of funds from investors was in the form of sales purportedly made directly from TCI to investors from approximately February 2002 through December 2004, totaling approximately $2.7 million.

33.     Of the approximately $2.7 million in investors funds obtained by the end of 2004, Nasser and Sholeh Hamedani used most to pay their personal and living expenses, and diverted some funds to Two Dog Net, as well as to pay commissions to Perez and Poyner.  However, in their statements to investors (including in Commission filings), Nasser and Sholeh Hamedani and TCI failed to disclose their substantial use of investor funds for the Hamedanis.

34.     Thus, TCI reported in its fiscal year 2004 annual report, filed with the Commission on Form 10-KSB (dated June 9, 2005), that from its inception in 2002 through the year-end 2004, only approximately $395,000 was used to fund TCI's operations.

35.     Of the remaining approximately $2.3 million collected from investors through December 2004, Nasser and Sholeh Hamedani transferred approximately $1.2 million to a checking account they used for personal expenses.  From the $1.2 million transferred to the checking account, Nasser and Sholeh Hamedani used approximately $300,000 to pay Nasser Hamedani's gambling expenses; approximately $275,000 to make payments for new automobiles, including a Corvette and a Mercedes sedan, and for a down payment and mortgage payments on a personal residence they shared; approximately $250,000 to write checks made payable to various of their family members or friends, or to "cash" or as cash withdrawals; and approximately $75,000 for other family expenses, such as school tuition and utility bills.  These uses were not disclosed to investors.

36.     Of the remaining $1.1 million collected from investors as of December 2004 but not diverted to the checking account used for personal expenses, Nasser and Sholeh Hamedani diverted the investor funds to, among things, Two Dog Net and commission payments totaling approximately $365,000 to Perez and Poyner.  In addition, Nasser and Sholeh Hamedani used approximately $150,000 to pay for the 51 percent interest in DWC in around July 2002, although the shares acquired were held in the name of Shadrack Films and later resold to TCI investors.  These uses were also not disclosed to investors.

37.     Nasser and Sholeh Hamedani each misused and misappropriated to their own purposes funds they knew, or were reckless in not knowing, investors had provided to them for the purpose of funding TCI and its operations.  Their misappropriation and misuse of the proceeds from the investments was material, in that it deprived TCI of significant funds.

D.     **Defendants Obtain Additional Investor Funds Through False Representations**

38.     On or around February 23, 2005, TCI's common stock first became publicly quoted on the OTC Bulletin Board, a system for the national quotation of securities.  During the first week of trading in TCI's securities via this quotation service, TCI's securities were bought and sold at prices ranging as high as approximately $6.00 to $10.00 per share.

39.     In the weeks and months just before and after TCI's stock was publicly quoted, Nasser and Sholeh Hamedani primed investors for this event by telling them that shares of TCI could be purchased directly from the company at a bargain to such market-driven prices. Thus, between December 2004 and June 2005, Nasser and Sholeh Hamedani solicited investors for, and sold, more than 750,000 shares of TCI common stock, collecting approximately $750,000 from more than 100 investors nationwide. Most of these sales were made during a three-month period between February and May 2005. No registration statement was filed with the Commission regarding the sale of these shares. (See Appendix B setting forth transactions.)

40.     Nasser and Sholeh Hamedani's verbal and written statements to investors and prospective investors that they were purchasing shares from the company, and that they made an investment with TCI, were false and misleading. Contrary to their representations, the shares purchased were not "an investment with TCI," but were rather sales of shares held in the name of Shadrack Films, the company that Sholeh Hamedani wholly owned and controlled. As a consequence, and undisclosed to investors, the money paid by investors was treated by Nasser and Sholeh Hamedani as their own money rather than capital for TCI.

41.     Defendants Nasser and Sholeh Hamedani knew, or were reckless in not knowing, that their claims to investors about who would benefit from the proceeds of the sales were false and misleading. Defendants' misrepresentations and omissions about the source of the shares and the use of proceeds were material because, among other reasons, investors were misled into believing that their purchases would provide operating capital for the company in which they were investing when, instead, their purchases only enriched Nasser and Sholeh Hamedani.

42.     As an officer, director, and a shareholder of more than 10 percent of the issued and outstanding shares of TCI, Sholeh Hamedani was required to report her purchases and sales of TCI stock made either directly, or indirectly on her behalf, to the Commission. However, from approximately July 2004 through December 2005, Sholeh Hamedani failed to report, in the forms required to be filed with the Commission, the sale of more than approximately 750,000 shares of stock between July 2004 and July 2005 that had been held in the name of Shadrack Films.

**E.    Defendants Limit and Control Public Sales of TCI Shares for Their Own Gain**

43.    When TCI's common stock first became publicly quoted on the OTC Bulletin Board, on or around February 23, 2005, defendants Nasser and Sholeh Hamedani controlled, through a series of devices, the vast majority of shares then traded through the new market.  They used their control to enrich themselves, by limiting the number of shares actually sold.

44.    Nasser and Sholeh Hamedani limited the number of shares that could be sold once TCI's stock became quoted on the OTC Bulletin Board by delaying the issuance of stock certificates to investors who had paid for their shares of TCI months or years earlier.  Although the defendants arranged for shares of TCI they owned or controlled to be available for resale from brokerage accounts, they failed to prepare, and purposefully delayed forwarding, necessary paperwork that TCI's public investors needed to transfer their shares.  At the same time, in written correspondence and in other communications, Sholeh Hamedani lulled investors into believing that they would be able to sell their TCI shares profitably as soon as a public market for the stock was initiated.

45.    By approximately mid-March 2005, Sholeh Hamedani received from TCI's transfer agent share certificates representing shares issued in the names of investors not controlled by the defendants.  However, Sholeh Hamedani did not provide the investors the certificates until on or around April 29, 2005.  By that point, the quoted share price for TCI's stock had fallen by approximately 80 percent and was then trading in the same range at which many investors had originally purchased their shares, at approximately $2.00 per share.

46.    Beginning in approximately February 2005, Nasser Hamedani arranged for two brokerage accounts to be opened, one in the name of Soraiya Hamedani, Nasser Hamedani's daughter, and the other in the name of Nasser Hamedani's nephew, Farzin Cigarchi, who was also one of the original five Nominees.  Within days of the initiation of the publicly-quoted market in February 2005, approximately 60,000 shares of TCI stock were deposited into Nasser Hamedani's daughter's brokerage account, which were then sold to the public immediately.  In total, more than 90,000 shares were sold from the account by approximately May 2005, netting Nasser Hamedani approximately $440,000.

47.     By early April 2005, the second account opened in the name of the nephew, Cigarchi, began to sell approximately 24,000 TCI shares deposited into that account, at a point when the quoted price ranged around $6.00 per share.  In total, approximately 830,000 TCI shares were sold from this account through approximately August 2005, netting Nasser Hamedani approximately $1.64 million.

48.     Of the more than $2 million generated by the sales of TCI shares from these accounts, approximately $1.6 million was delivered to Nasser Hamedani through checks and withdrawals from the brokerage accounts, while his relatives used the remaining approximately $400,000.

49.     Sholeh Hamedani acted knowingly, or recklessly, and with the intent to deceive TCI's investors, by withholding share certificates and by lulling investors with false promises regarding their future receipt of share certificates.  Nasser Hamedani acted knowingly, or recklessly, and with the intent to deceive TCI's investors, by controlling the trading of shares in TCI through accounts held in the names of other persons.

**F.      Defendants Made False Statements in Filings with the Commission**

*False and Misleading Registration Statement*

50.     On or about February 10, 2003, TCI filed with the Commission a registration statement (on Form SB-2) seeking to register stock sale transactions relating to 1,118,500 shares by approximately 80 persons described as selling shareholders.  Also described in the registration statement were an additional 4 million shares to be issued by TCI.  On six dates – July 3, 2003, September 11, 2003, December 8, 2003, February 13, 2004, April 6, 2004, and April 29, 2004 – TCI submitted amendments to this registration statement (on Forms SB-2/A), prior to the date TCI listed in its prospectus (filed with the Commission on or around May 13, 2004) as the effective date of the registration, May 5, 2004.

51.     The February 2003 registration statement (and each of the six amendments) falsely and materially described the number of shares TCI had purported to sell to investors, and to whom.  Consequently, the registration statement (and the amendments) misrepresented who the true shareholders of TCI were, who controlled TCI, and who would benefit from resales of the shares described in the registration statement.

52.     In particular, the registration statement (and the six amendments) falsely stated the total number of TCI shares that had previously been sold.  It thus stated that the number of shares of TCI stock that were then issued and outstanding totaled 2,287,755.  However, the registration statement failed to disclose that, by approximately April 29, 2004 (the date of the last amendment filed prior to the effective date of the registration statement), Nasser and Sholeh Hamedani and TCI had purported to sell a total of approximately 800,000 shares of TCI over and above the 2,287,755 shares that were described as issued and outstanding.  Defendants' misrepresentations and omissions in the registration statement materially understated the number of TCI's shares sold, and thus understated the value to each shareholder of their respective investment in the company.

53.     The registration statement (and the six amendments) also materially misstated the ownership stake of various of the selling shareholders.  For instance, among the approximately 80 selling shareholders listed were four of the original Nominees who were described as owning a total of 12.20 percent of TCI's outstanding shares.  However, the registration statement (and the six amendments) did not disclose that TCI, Nasser Hamedani and Sholeh Hamedani actually controlled the disposition of the Nominees' shares.  The registration statement (and the six amendments) also falsely stated that "all proceeds from the sale of [the selling shareholders'] shares … will go directly to the selling stockholders," when in fact a large amount of the proceeds actually flowed to Nasser and Sholeh Hamedani.  These statements and omissions were material, in that they disguised who the "selling shareholders" truly were, and who would be enriched by the subsequent sales.

54.     The registration statement (and the six amendments) also failed to disclose the fact that Nasser Hamedani, together with Sholeh Hamedani, essentially ran TCI from approximately July 2002 through the date of the sixth amendment in April 2004.  Among other things, Nasser Hamedani arranged for the purchase of the shell company which became TCI, hired Perez and Poyner, managed the sale of TCI's stock to investors, made decisions about key aspects of TCI's business including choosing TCI personnel, and maintained control, with Sholeh Hamedani, of bank accounts into which TCI's investors' funds were deposited.

55.     TCI's registration statement (and the six amendments) also falsely stated that Sholeh Hamedani ". . . does not have an arrangement with a broker or dealer to effect transactions in

securities," and further listed defendant Poyner, and the entity he controlled, as a selling shareholders who owned 60,000; however, the registration statement failed to disclose that defendant Peter Perez was acting as a broker for TCI and selling TCI shares at the time the registration statement, and each of the amendments, was filed with the Commission.

56.     Each of the false and misleading statements and material omissions of fact described above and contained in the registration statement were material because, among other things, they misstated important information to investors about the number of TCI shares outstanding and the value of each investor's shares, who controlled TCI, and how the proceeds from stock sales were used to secretly enrich defendants Nasser and Sholeh Hamedani.

57.     Sholeh Hamedani signed the false and misleading registration statement and each of the six amendments as TCI's chief executive officer, chief financial officer, and president, while knowing or reckless in not knowing, among other things, that statements about the ownership of the shares of TCI, who controlled TCI, and who would benefit from resales of the shares described in the registration statement were not true.

58.     Nasser Hamedani knowingly supplied substantial assistance to Sholeh Hamedani and TCI in preparing the false and misleading registration statement and each of the six amendments, by among other things, arranging for transactions in TCI securities that he controlled to be conducted through Nominees, and misreporting and disguising his control over TCI's operations.

### *False and Misleading June 2005 Annual Report and Restatement*

59.     On or around June 8, 2005, defendants Nasser Hamedani, Sholeh Hamedani and TCI continued in their fraudulent scheme to mislead investors about the TCI securities they had sold by making false statements in the TCI annual report filed with the Commission on Form 10-KSB for the period ended December 31, 2004.  The annual report included a "restatement," purportedly of the financial results of TCI for the annual periods ending December 31, 2002 and 2003 (and for interim quarterly periods), which the company represented was for the purpose of correcting information about shares issued and outstanding by the company.  In fact, the information included in the restatement was itself false and misleading.

60.     In describing the restatement in the annual report on Form 10-KSB, TCI stated that its "management identified an agreement that the Company had entered into with five of our shareholders on October 11, 2002," but that the supposed "agreement was not disclosed in any of the Company's previous SEC filings or otherwise included as an exhibit as a result of an error of omission." According to TCI, the purportedly omitted October 11, 2002 agreement memorialized a stock split in which the five shareholders received "restricted" shares in exchange for their then-existing shares. Specifically, TCI represented:

> This agreement provided that . . . the Company would issue four shares of its restricted common stock for every one share owned. The aggregate number of shares of restricted common stock that the Company was obligated to issue pursuant to the agreement was 4,474,000 . . . shares.

61.     TCI's representations about the existence of the purportedly omitted October 11, 2002 agreement, the terms of the agreement, and the consequences of the agreement were false and misleading because, among other things, TCI's public filings, its other agreements, its internal documentation, the actions of TCI's board, and the actions of the purported signatories to the agreement at the time of and after the supposed date of the agreement contradict the existence of any such agreement.

62.     The false restatement was actually prepared to cover up, after the fact, the sales of TCI shares to investors by TCI and Nasser and Sholeh Hamedani, in numbers that greatly exceeded the number of shares that TCI then had issued and outstanding. In particular, based on the representations and promises of TCI and Nasser and Sholeh Hamedani to investors, the defendants had oversold by approximately 35 percent the number of shares of TCI that had actually been approved by TCI's board of directors and issued by the company.

63.     The misrepresentations about the restatement and the purportedly omitted agreement, contained in the June 2005 annual report filed on Form 10-KSB, were material, in that they misrepresented important facts about the number of TCI shares issued and outstanding and the value of each investor's stake in the company; who controlled TCI; and the capitalization of TCI during 2002, 2003 and 2004.

64.     In connection with the audit conducted of TCI's financial statements by the company's outside auditors, Sholeh Hamedani made false representations to the auditors about the existence of the October 11, 2002 agreement.

65.     Sholeh Hamedani signed TCI's fiscal 2005 annual report, filed on Form 10-KSB, as TCI's chief executive officer and chief financial officer, and she falsely certified, among other things, that she was aware of no fraud in connection with the preparation of TCI's financial statements.

66.     Nasser Hamedani knowingly supplied substantial assistance to Sholeh Hamedani and TCI in preparing the false and misleading annual report and restatement, by among other things, knowingly arranging for transactions in TCI securities which grossly exceeded the number of shares TCI had issued, and employing devices to hide that fact from investors and other persons.

### *False and Misleading 2005 Current and Quarterly Reports*

67.     Defendants TCI and Sholeh Hamedani also made false and misleading representations and omissions regarding the number of shares TCI had issued and sold to investors in current and quarterly reports filed with the Commission.  Thus, a current report filed with the Commission on Form 8-K by TCI, dated on or about February 22, 2005, falsely stated that "the most recent sale of a share of [TCI's] common stock . . . occurred in October 2002 in a private transaction" and purportedly at a price of "$.07 per share."  In fact, TCI represented to hundreds of investors between October 2002 and February 2005 that they were purchasing TCI shares from TCI for prices ranging from $0.50 to $2.00 per share, and those sales involved more than a million shares.  The representations in the February 2005 current report were material in that they concealed the number of shares TCI had sold, and thus the value of each investor's investment in TCI.

68.     Defendants TCI and Sholeh Hamedani also made misrepresentations and omissions of fact about the existence of the purportedly omitted October 11, 2002 agreement in a current report filed with the Commission on Form 8-K, dated on or about April 20, 2005 and in a quarterly report for the period ended June 30, 2005, filed with the Commission on Form 10-QSB on or around August 15, 2005.  In both the April 2005 current report, and the August 2005 quarterly report, TCI falsely described that the October 11, 2002 agreement existed and falsely set forth purported terms of the agreement.  These statements were misrepresentations.  TCI and Sholeh Hamedani made further

1    misrepresentations about the consequences of the purported agreement to TCI's previously reported

2    financial results and the number of shares the company had issued and outstanding.

3          69.    Sholeh Hamedani signed the current report filed with the Commission on Form 8-K as

4    TCI's chief executive officer, and she signed the quarterly report filed with the Commission on Form

5    10-QSB as TCI's chief executive officer and chief financial officer, while knowing, or reckless in not

6    knowing, that the representations made in each about the existence of the October 11, 2002

7    agreement were not true.

8          70.    Sholeh Hamedani also falsely certified in the quarterly report filed with the

9    Commission on Form 10-QSB, as the chief executive officer and the chief financial officer of TCI,

10   among other things, that the report did "not contain any untrue statement of a material fact or omit to

11   state a material fact necessary to make the statements made, in light of the circumstances under which

12   such statements were made, not misleading" and "[a]ny fraud, whether or not material, that involves

13   management or other employees who have a significant role in the Company's internal control and

14   procedures over financial reporting." Her certifications were false and misleading because, among

15   other things, she knew or should have known that the representations about the purported October 11,

16   2002 agreement were not true.

17         71.    The representations and omissions of fact in each of the current and quarterly reports

18   were material because, among other things, they concealed the number of shares TCI had sold, and

19   thus significantly misstated the value of each investor's investment in TCI.

20                                        **FIRST CLAIM FOR RELIEF**

21              *Violations of Sections 5(a) and 5(c) of the Securities Act by all Defendants*

22         72.    Paragraphs 1 through 71 are re-alleged and incorporated by reference.

23         73.    By engaging in the conduct described above, TCI, Two Dog Net, Sholeh Hamedani,

24   Nasser Hamedani, Perez, and Poyner, directly or indirectly, by use of the means and instruments of

25   transportation and communication in interstate commerce, and by use of the mails, offered to sell and

26   sold certain securities as to which no registration statement was either filed with the Commission nor

27   in effect.

28

74.   By reason of the foregoing, the defendants violated and, unless restrained and enjoined, will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and 15 U.S.C. § 77e(c)].

## SECOND CLAIM FOR RELIEF

*Violations of Section 17(a) of the Securities Act by all Defendants*

75.   Paragraphs 1 through 71 are re-alleged and incorporated by reference.

76.   By engaging in the conduct described above, TCI, Two Dog Net, Sholeh Hamedani, Nasser Hamedani, Perez, and Poyner, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter:

   (a)  employed devices, schemes, or artifices to defraud;

   (b)  obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

   (c)  engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

77.   By reason of the foregoing, the defendants violated and, unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5 by all Defendants*

78.   Paragraphs 1 through 71 are re-alleged and incorporated by reference.

79.   By engaging in the conduct described above, TCI, Two Dog Net, Sholeh Hamedani, Nasser Hamedani, Perez and Poyner, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

   a. employed devices, schemes, or artifices to defraud;

b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

80. By reason of the foregoing, defendants violated and, unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

81. By reason of the foregoing, Two Dog Net, Nasser Hamedani, Perez and Poyner knowingly provided substantial assistance to violations by others of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], and therefore are liable as aiders and abettors pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

### FOURTH CLAIM FOR RELIEF

*Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11,*

*13a-13 by TCI, Aided and Abetted by Sholeh Hamedani*

82. Paragraphs 1 through 71 are re-alleged and incorporated by reference.

83. Based on the conduct alleged above, TCI violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13], which obligate issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to file with the Commission accurate quarterly, current and annual reports.

84. By reason of the foregoing, TCI violated, and unless restrained and enjoined, will continue to violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

85. By engaging in the conduct alleged above, Sholeh Hamedani knowingly provided substantial assistance to TCI's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13], and therefore is liable as an aider and abettor pursuant to Section 20(e) of the

1    Exchange Act [15 U.S.C. § 78t(e)].  Unless restrained and enjoined, Sholeh Hamedani will continue

2    to aid and abet such violations.

### FIFTH CLAIM FOR RELIEF

*Violations of Section 13(b)(2)(A) of the Exchange Act by TCI,*

*Aided and Abetted by Sholeh Hamedani*

6    86.    Paragraphs 1 through 71 are re-alleged and incorporated by reference.

7    87.    Based on the conduct alleged above, TCI violated Section 13(b)(2)(A) of the

8    Exchange Act [15 U.S.C. § 78m(b)(2)(A)], which obligates issuers of securities registered pursuant to

9    Section 12 of the Exchange Act [15 U.S.C. § 78*l*] to make and keep books, records and accounts

10   which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets

11   of the issuer.

12   88.    By engaging in the conduct described above, TCI violated and, unless restrained and

13   enjoined, will continue to violate Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §

14   78m(b)(2)(A)].

15   89.    By engaging in the conduct alleged above, Sholeh Hamedani knowingly provided

16   substantial assistance to TCI's violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §

17   78m(b)(2)(A)], and therefore is liable as an aider and abettor pursuant to Section 20(e) of the

18   Exchange Act [15 U.S.C. § 78t(e)].  Unless restrained and enjoined, Sholeh Hamedani will continue

19   to aid and abet such violations.

### SIXTH CLAIM FOR RELIEF

*Violations of Section 13(b)(2)(B) of the Exchange Act by TCI,*

*Aided and Abetted by Sholeh Hamedani*

23   90.    Paragraphs 1 through 71 are re-alleged and incorporated by reference.

24   91.    Based on the conduct alleged above, TCI violated Section 13(b)(2)(B) of the

25   Exchange Act [15 U.S.C. § 78m(b)(2)(B)], which obligates issuers of securities registered pursuant to

26   Section 12 of the Exchange Act [15 U.S.C. § 78*l*] to devise and maintain a sufficient system of

27   internal accounting controls.

28

92.   By engaging in the conduct described above, TCI violated, and unless restrained and enjoined, will continue to violate Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

93.   By engaging in the conduct alleged above, Sholeh Hamedani knowingly provided substantial assistance to TCI's violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)], and therefore is liable as an aider and abettor pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].  Unless restrained and enjoined, Sholeh Hamedani will continue to aid and abet such violations.

## SEVENTH CLAIM FOR RELIEF

*Violation of Section 13(b)(5) of the Exchange Act and Rule 13b2-1 by Sholeh Hamedani*

94.   Paragraphs 1 through 71 are re-alleged and incorporated by reference.

95.   By the conduct alleged above, Sholeh Hamedani knowingly falsifying certain books, records, and accounts and knowingly circumvented TCI's system of internal accounting controls, in violation of Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)], and Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

96.   Unless restrained and enjoined, Sholeh Hamedani will continue to violate Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)], and Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

## EIGHTH CLAIM FOR RELIEF

*Violation of Exchange Act Rule 13b2-2 by Sholeh Hamedani*

97.   Paragraphs 1 through 71 are re-alleged and incorporated by reference.

98.   By engaging in the acts and conduct alleged above, Sholeh Hamedani, directly or indirectly, knowingly made or caused to be made materially false or misleading statements or omitted to state or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading to an accountant in connection with an audit or examination of the financial statements of TCI required to be made or the preparation or filing of reports required to be filed by TCI with the Commission

99.   By reason of the foregoing, Sholeh Hamedani violated and, unless restrained and enjoined, will continue to violate Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

1

**NINTH CLAIM FOR RELIEF**

2

*Violation of Exchange Act Rule 13a-14 by Sholeh Hamedani*

3      100.    Paragraphs 1 through 71 are re-alleged and incorporated by reference.

4      101.    As TCI's principal executive officer and principal financial officer, Sholeh Hamedani

5   signed false certifications pursuant to Rule 13a-14 under the Exchange Act [17 C.F.R. § 240.13a-14]

6   which were included in TCI's annual report for the year ended December 31, 2004, filed with the

7   Commission on Form 10-KSB.  In the certification, Sholeh Hamedani falsely stated, among other

8   things, that: (a) the report did not contain any untrue statement of a material fact or omit to state a

9   material fact necessary to make the statements made, in light of the circumstances under which such

10  statements were made, not misleading; and (b) the financial statements, and other financial

11  information included in the report, fairly presented in all material respects the financial condition,

12  results of operations, and cash flows of TCI as of, and for, the period presented in the report.

13      102.    By reason of the foregoing, Sholeh Hamedani has violated and, unless restrained and

14  enjoined, will continue to violate Exchange Act Rule 13a-14 [17 C.F.R. §240.13a-14].

15

**TENTH CLAIM FOR RELIEF**

16

*Violations of Section 16(a) of the Exchange Act by Sholeh Hamedani*

17      103.    Paragraphs 1 through 71 are re-alleged and incorporated by reference.

18      104.    Sholeh Hamedani was an officer and director of TCI and, directly or indirectly, a

19  beneficial owner of more than ten percent of TCI's common stock.

20      105.    By engaging in the conduct described above, Sholeh Hamedani failed to file

21  statements accurately reflecting changes in her beneficial ownership of TCI's common stock and

22  annual statements accurately reflecting her beneficial ownership of TCI's common stock.

23  By reason of the foregoing, Sholeh Hamedani violated and, unless restrained and enjoined, will

24  continue to violate, Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)].

25

**ELEVENTH CLAIM FOR RELIEF**

26

*Violations of Section 15(a) of the Exchange Act against Perez and Poyner*

27      106.    Paragraphs 1 through 71 are re-alleged and incorporated by reference.

28

1          107.    By engaging in the conduct described above, Perez and Poyner, through use of the

2   mails or means or instrumentalities of interstate commerce, effected transactions in, and induced or

3   attempted to induce the purchase or sale of, securities (other than an exempted security or

4   commercial paper, bankers' acceptances, or commercial bills) as a broker but without being

5   registered with the Commission in accordance with Section 15(b) of the Exchange Act [15 U.S.C. §

6   78o(b)].

7          108.    By reason of the foregoing, Perez and Poyner, violated, and unless enjoined will

8   continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

9                                            **PRAYER FOR RELIEF**

10         WHEREFORE, the Commission respectfully requests that this Court:

11                                                    I.

12         Issue an order permanently restraining and enjoining all Defendants and their agents, servants,

13   employees, attorneys, and assigns, and those persons in active concert or participation with them,

14   from violating Sections 5(a) and (c) and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c), and

15   77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §

16   240.10b-5]; permanently restraining and enjoining Sholeh Hamedani and her agents, servants,

17   employees, attorneys, and assigns, and those persons in active concert or participation with them,

18   from violating Sections 13(b)(5) and 16(a) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rules

19   13a-14, 13b2-1 and 13b2-2 [17 C.F.R. §§ 240.13a-14, 240.13b2-1, and 240.13b2-2]; permanently

20   restraining and enjoining TCI and its agents, servants, employees, attorneys, and assigns, and those

21   persons in active concert or participation with them, from violating Sections 13(a), 13(b)(2)(A), and

22   13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)], and

23   Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and

24   240.13a-13], and further permanently restraining and enjoining Sholeh Hamedani and her agents,

25   servants, employees, attorneys, and assigns, and those persons in active concert or participation with

26   them, from aiding and abetting such violations; and further permanently restraining and enjoining

27   Perez and Poyner and their agents, servants, employees, attorneys, and assigns, and those persons in

28

1  active concert or participation with them, from violating Section 15(a) of the Exchange Act [15

2  U.S.C. § 78o(b)].

3                                        II.

4        Issue an order requiring each defendant to disgorge his ill-gotten gains, plus prejudgment

5  interest;

6                                        III.

7        Issue an order requiring each defendant to pay civil monetary penalties pursuant to Section

8  20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C.

9  § 78u(d)(3)];

10                                       IV.

11       Issue an order pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)],

12  prohibiting Sholeh Hamedani and Nasser Hamedani from acting as officers or directors of an issuer

13  that has a class of securities registered, or is required to file reports, pursuant to the Exchange Act;

14                                        V.

15       Issue an order pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)],

16  prohibiting Sholeh Hamedani, Nasser Hamedani, Perez and Poyner from participating in any offering

17  of penny stock;

18                                       VI.

19       Retain jurisdiction over this action in accordance with the principles of equity and the Federal

20  Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that

21  may be entered, or to entertain any suitable application or motion for additional relief within the

22  jurisdiction of this Court; and

23

24

25

26

27

28

VII.

Grant such additional relief as the Court may determine to be just and necessary.

Dated: September 27, 2006

Respectfully submitted,

*Sheila E. O'Callaghan*

Sheila E. O'Callaghan
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION

# Appendix A

| Investment Date | Investor | Price | # of Shares | Total Investment |
|---|---|---|---|---|
| 2/25/2002 | CA | 2.00 | 5,000 | $10,000.00 |
| 3/4/2002 | MJ | 2.00 | 8,000 | $16,000.00 |
| 3/6/2002 | OLE | 2.00 | 5,000 | $10,000.00 |
| 3/11/2002 | WM | 2.00 | 15,000 | $30,000.00 |
| 3/14/2002 | LD | 2.00 | 5,000 | $10,000.00 |
| 3/14/2002 | NT | 2.00 | 10,000 | $20,000.00 |
| 3/20/2002 | J1(JSP) | 2.00 | 12,500 | $25,000.00 |
| 3/20/2002 | PJS(J1) | 2.00 | 12,500 | $25,000.00 |
| 3/25/2002 | FE | 2.00 | 4,000 | $8,000.00 |
| 3/29/2002 | HK | 2.00 | 1,000 | $2,000.00 |
| 3/29/2002 | LM | 2.00 | 750 | $1,500.00 |
| 4/1/2002 | HR | 2.00 | 6,500 | $13,000.00 |
| 4/17/2002 | DT | 2.00 | 2,500 | $5,000.00 |
| 4/18/2002 | EM | 2.00 | 5,000 | $10,000.00 |
| 4/18/2002 | HV | 2.00 | 4,000 | $8,000.00 |
| 4/19/2002 | GT | 2.00 | 500 | $1,000.00 |
| 4/24/2002 | HPK | 2.00 | 2,000 | $4,000.00 |
| 5/1/2002 | KRL | 2.00 | 10,000 | $20,000.00 |
| 5/1/2002 | MGG(J) | 2.00 | 5,000 | $10,000.00 |
| 5/1/2002 | PKG | 2.00 | 1,000 | $2,000.00 |
| 5/1/2002 | SR | 2.00 | 2,500 | $5,000.00 |
| 5/1/2002 | WLG | 2.00 | 1,000 | $2,000.00 |
| 5/2/2002 | SR | 2.00 | 1,000 | $2,000.00 |
| 5/3/2002 | SWPO | 2.00 | 5,000 | $10,000.00 |
| 5/3/2002 | SN | 2.00 | 20,000 | $40,000.00 |
| 5/6/2002 | CAF | 2.00 | 4,000 | $8,000.00 |
| 5/6/2002 | CR | 2.00 | 2,000 | $4,000.00 |
| 5/7/2002 | CJ | 2.00 | 2,500 | $5,000.00 |
| 5/10/2002 | CF | 2.00 | 2,500 | $5,000.00 |
| 5/10/2002 | HE | 2.00 | 1,250 | $2,500.00 |
| 5/11/2002 | GRE | 2.00 | 1,250 | $2,500.00 |
| 5/13/2002 | ML | 2.00 | 1,000 | $2,000.00 |
| 5/13/2002 | MEP | 2.00 | 1,250 | $2,500.00 |
| 5/20/2002 | KRL | 2.00 | 5,000 | $10,000.00 |
| 5/21/2002 | GJ | 2.00 | 5,000 | $10,000.00 |
| 5/31/2002 | SS(CE) | 2.00 | 60,000 | $120,000.00 |
| 6/7/2002 | PM | 2.00 | 10,000 | $20,000.00 |
| 6/18/2002 | AM | 2.00 | 1,500 | $3,000.00 |
| 6/20/2002 | DJ | 2.00 | 5,000 | $10,000.00 |
| 6/20/2002 | EP | 2.00 | 2,500 | $5,000.00 |
| 6/21/2002 | GW | 2.00 | 20,000 | $40,000.00 |
| 6/24/2002 | BF | 2.00 | 23,000 | $46,000.00 |
| 6/24/2002 | PJ | 2.00 | 15,000 | $30,000.00 |
| 7/2/2002 | SD | 2.00 | 1,000 | $2,000.00 |
| 7/2/2002 | SS | 2.00 | 50,000 | $100,000.00 |
| 7/3/2002 | EPJ | 2.00 | 2,000 | $4,000.00 |
| 7/3/2002 | PM | 2.00 | 1,000 | $2,000.00 |
| 7/22/2002 | BMA | 1.50 | 6,000 | $9,000.00 |
| 7/29/2002 | KT | 2.00 | 2,500 | $5,000.00 |
| 7/31/2002 | LR | 2.00 | 5,000 | $10,000.00 |
| 8/8/2002 | PD | 2.00 | 3,000 | $6,000.00 |
| 9/11/2002 | HE | 2.00 | 1,500 | $3,000.00 |
| 9/17/2002 | GB(NS) | 2.00 | 3,000 | $6,000.00 |
| 9/19/2002 | JA | 2.00 | 1,000 | $2,000.00 |
| 9/26/2002 | CJ(MC) | 2.00 | 2,500 | $5,000.00 |

# Appendix A

| Investment Date | Investor | Price | # of Shares | Total Investment |
|---|---|---|---|---|
| 10/7/2002 | BDK | 2.00 | 10,000 | $20,000.00 |
| 10/14/2002 | GB(NS) | 2.00 | 2,000 | $4,000.00 |
| 10/25/2002 | WM | 2.00 | 500 | $1,000.00 |
| 10/31/2002 | LH | 2.00 | 25,000 | $50,000.00 |
| 10/31/2002 | LH | 1.50 | 33,335 | $50,000.00 |
| 11/5/2002 | SA | | 32,160 | |
| 11/5/2002 | SS | 1.00 | 100,000 | $100,000.00 |
| 11/27/2002 | SR | 1.00 | 1,300 | $1,300.00 |
| 11/30/2002 | MD | 1.00 | 1,000 | $1,000.00 |
| 12/30/2002 | AJ | 1.00 | 5,000 | $5,000.00 |
| 12/31/2002 | OJ | 1.00 | 10,000 | $10,000.00 |
| 1/2/2003 | HGM | 1.00 | 2,500 | $2,500.00 |
| 1/3/2003 | CEL | 1.00 | 10,000 | $10,000.00 |
| 1/3/2003 | JL | 1.00 | 5,000 | $5,000.00 |
| 1/3/2003 | KE | 1.00 | 5,000 | $5,000.00 |
| 1/3/2003 | SM | 1.00 | 5,000 | $5,000.00 |
| 1/6/2003 | DB | 1.00 | 5,000 | $5,000.00 |
| 1/7/2003 | PFP | 2.00 | 35,000 | $70,000.00 |
| 1/7/2003 | TBF | 1.00 | 2,500 | $2,500.00 |
| 1/9/2003 | EB | 1.00 | 5,000 | $5,000.00 |
| 1/9/2003 | SR3 | 1.00 | 5,000 | $5,000.00 |
| 1/9/2003 | SRS | 1.00 | 5,000 | $5,000.00 |
| 1/15/2003 | PFP(PP) | 2.00 | 12,000 | $23,980.00 |
| 1/15/2003 | SGS | 1.00 | 5,000 | $5,000.00 |
| 1/16/2003 | PFP(PP) | 2.00 | 5,000 | $10,000.00 |
| 1/16/2003 | PFP(PP) | 2.00 | 8,000 | $15,985.00 |
| 1/23/2003 | FF | 1.00 | 6,000 | $6,000.00 |
| 3/21/2003 | AD | 2.00 | 2,500 | $5,000.00 |
| 4/1/2003 | SS(CE) | 1.00 | 150,000 | $150,000.00 |
| 4/29/2003 | LM | 2.00 | 3,000 | $6,000.00 |
| 5/1/2003 | LM | 2.00 | 5,000 | $10,000.00 |
| 5/9/2003 | OS | 1.50 | 35,000 | $52,500.00 |
| 5/12/2003 | WT | 1.50 | 35,000 | $52,500.00 |
| 6/4/2003 | CMM | 1.50 | 1,334 | $2,001.00 |
| 6/4/2003 | CM | 1.50 | 1,334 | $2,001.00 |
| 6/4/2003 | CM(PT) | 1.50 | 1,334 | $2,001.00 |
| 6/12/2003 | HM | 1.50 | 6,667 | $10,000.00 |
| 7/31/2003 | SK | 0.50 | 20,000 | $10,000.00 |
| 8/1/2003 | KRL | 1.00 | 10,000 | $10,000.00 |
| 8/6/2003 | SS(CE) | 0.50 | 100,000 | $50,000.00 |
| 8/8/2003 | KRL | 1.00 | 10,000 | $10,000.00 |
| 8/8/2003 | SD | 1.00 | 10,000 | $10,000.00 |
| 8/15/2003 | FE | 1.00 | 5,000 | $5,000.00 |
| 8/18/2003 | KRL | 1.00 | 10,000 | $10,000.00 |
| 9/9/2003 | KRL | 1.50 | 15,000 | $22,500.00 |
| 9/11/2003 | DT | 1.50 | 10,000 | $15,000.00 |
| 9/16/2003 | HRK | 1.50 | 5,000 | $7,500.00 |
| 9/18/2003 | FE | 1.50 | 6,000 | $9,000.00 |
| 9/22/2003 | CSA | 1.50 | 2,500 | $3,750.00 |
| 9/22/2003 | DB | 1.00 | 5,000 | $5,000.00 |
| 9/22/2003 | ER | 1.50 | 10,000 | $15,000.00 |
| 9/22/2003 | EHN | 1.50 | 5,000 | $7,500.00 |
| 9/22/2003 | GN | 1.50 | 2,500 | $3,750.00 |

# Appendix A

| Investment Date | Investor | Price | # of Shares | Total Investment |
|---|---|---|---|---|
| 9/22/2003 | HT | 1.50 | 5,000 | $7,500.00 |
| 9/22/2003 | HD | 1.50 | 5,000 | $7,500.00 |
| 9/22/2003 | KPJ | 1.50 | 5,000 | $7,500.00 |
| 9/22/2003 | OG | 1.50 | 5,000 | $7,500.00 |
| 9/25/2003 | AS | 1.50 | 1,000 | $1,500.00 |
| 9/25/2003 | KRL | 1.50 | 8,000 | $12,000.00 |
| 9/25/2003 | NCJ | 1.50 | 1,000 | $1,500.00 |
| 9/25/2003 | OW | 1.50 | 5,000 | $7,500.00 |
| 10/31/2003 | KRL | 1.50 | 30,000 | $45,000.00 |
| 11/18/2003 | EM | 1.50 | 2,500 | $3,750.00 |
| 11/18/2003 | ER | 1.50 | 7,500 | $11,250.00 |
| 11/18/2003 | ET | 1.50 | 12,500 | $18,750.00 |
| 11/18/2003 | EHN | 1.50 | 2,500 | $3,750.00 |
| 11/18/2003 | RD | 1.50 | 2,500 | $3,750.00 |
| 11/25/2003 | ES | 1.50 | 2,000 | $3,000.00 |
| 11/25/2003 | FE | 1.50 | 3,000 | $4,500.00 |
| 12/1/2003 | LV | 1.00 | 2,300 | $2,300.00 |
| 12/8/2003 | HT | 1.50 | 3,200 | $4,800.00 |
| 1/3/2004 | MDF | 1.50 | 1,500 | $2,250.00 |
| 1/8/2004 | ED | 1.50 | 3,500 | $5,250.00 |
| 1/8/2004 | VG | 1.50 | 5,000 | $7,500.00 |
| 1/13/2004 | MEL | 1.50 | 1,500 | $2,250.00 |
| 1/14/2004 | KRL | 1.50 | 20,000 | $30,000.00 |
| 1/29/2004 | RTK | 1.50 | 3,000 | $4,500.00 |
| 1/29/2004 | TL | 1.50 | 600 | $900.00 |
| 1/30/2004 | AS | 1.50 | 1,000 | $1,500.00 |
| 1/30/2004 | CD | 1.50 | 5,000 | $7,500.00 |
| 1/30/2004 | ER | 1.50 | 20,000 | $30,000.00 |
| 1/30/2004 | GL | 1.50 | 2,000 | $3,000.00 |
| 1/30/2004 | HD | 1.50 | 5,000 | $7,500.00 |
| 1/30/2004 | HRJ | 1.50 | 10,000 | $15,000.00 |
| 1/30/2004 | MWI | 1.50 | 800 | $1,200.00 |
| 1/30/2004 | MAK | 1.50 | 750 | $1,125.00 |
| 1/30/2004 | OG | 1.50 | 10,000 | $15,000.00 |
| 1/30/2004 | PBMN | 1.50 | 1,000 | $1,500.00 |
| 1/30/2004 | RRM | 1.50 | 2,000 | $3,000.00 |
| 1/30/2004 | VG | 1.50 | 1,500 | $2,250.00 |
| 2/2/2004 | HJ | 1.50 | 2,000 | $3,000.00 |
| 2/2/2004 | PS | 1.50 | 6,500 | $9,750.00 |
| 2/4/2004 | HRK | 1.50 | 6,500 | $9,750.00 |
| 2/4/2004 | KK | 1.50 | 1,000 | $1,500.00 |
| 2/4/2004 | KC | 1.50 | 2,000 | $3,000.00 |
| 2/4/2004 | KPJ | 1.50 | 5,000 | $7,500.00 |
| 2/4/2004 | NCJ | 1.50 | 1,000 | $1,500.00 |
| 2/10/2004 | KL | 1.50 | 5,000 | $7,500.00 |
| 2/10/2004 | KRL | 1.50 | 22,500 | $33,750.00 |
| 2/11/2004 | KK | 1.50 | 1,000 | $1,500.00 |
| 2/17/2004 | HRK | 1.50 | 6,000 | $9,000.00 |
| 2/17/2004 | KRL | 1.50 | 3,000 | $4,500.00 |
| 2/18/2004 | KC | 1.50 | 1,000 | $1,500.00 |
| 3/9/2004 | FE | 1.50 | 3,500 | $5,250.00 |
| 3/15/2004 | KK | 1.50 | 1,000 | $1,500.00 |

# Appendix A

| Investment Date | Investor | Price | # of Shares | Total Investment |
|---|---|---|---|---|
| 3/16/2004 | DD | 1.50 | 3,000 | $4,500.00 |
| 3/17/2004 | PM | 1.50 | 2,000 | $3,000.00 |
| 3/19/2004 | HK(RH) | 1.50 | 1,000 | $1,500.00 |
| 3/19/2004 | KB(JK) | 1.50 | 1,000 | $1,500.00 |
| 3/19/2004 | KB(KK) | 1.50 | 1,000 | $1,500.00 |
| 3/19/2004 | KB(PK) | 1.50 | 1,000 | $1,500.00 |
| 3/19/2004 | KB(RK) | 1.50 | 1,000 | $1,500.00 |
| 3/19/2004 | KC | 1.50 | 1,000 | $1,500.00 |
| 3/19/2004 | KRL | 1.50 | 13,000 | $19,500.00 |
| 4/8/2004 | BD | 1.50 | 10,000 | $15,000.00 |
| 4/21/2004 | SS | 0.50 | 100,000 | $50,000.00 |
| 5/14/2004 | AS | 1.50 | 1,000 | $1,500.00 |
| 5/14/2004 | CD | 1.50 | 500 | $750.00 |
| 5/14/2004 | CD | 1.50 | 3,000 | $4,500.00 |
| 5/14/2004 | DD | 1.50 | 2,000 | $3,000.00 |
| 5/14/2004 | HRJ | 1.50 | 2,500 | $3,750.00 |
| 5/14/2004 | KCJ | 1.50 | 1,000 | $1,500.00 |
| 5/14/2004 | KF | 1.50 | 5,000 | $7,500.00 |
| 5/14/2004 | KB(JK) | 1.50 | 500 | $750.00 |
| 5/14/2004 | KB(KK) | 1.50 | 500 | $750.00 |
| 5/14/2004 | KB(PK) | 1.50 | 500 | $750.00 |
| 5/14/2004 | KB(RK) | 1.50 | 500 | $750.00 |
| 5/14/2004 | KC | 1.50 | 1,000 | $1,500.00 |
| 5/14/2004 | KRL | 1.50 | 2,000 | $3,000.00 |
| 5/14/2004 | LC | 1.50 | 2,500 | $3,750.00 |
| 5/14/2004 | LC | 1.50 | 1,000 | $1,500.00 |
| 5/14/2004 | LC | 1.50 | 1,400 | $2,100.00 |
| 5/14/2004 | LS | 1.50 | 2,500 | $3,750.00 |
| 5/14/2004 | LT | 1.50 | 200 | $300.00 |
| 5/14/2004 | MKK | 1.50 | 665 | $997.50 |
| 5/14/2004 | NCJ | 1.50 | 2,000 | $3,000.00 |
| 5/14/2004 | PS | 1.50 | 2,500 | $3,750.00 |
| 5/14/2004 | SGE | 1.50 | 750 | $1,125.00 |
| 5/17/2004 | PBMN | 1.50 | 3,500 | $5,250.00 |
| 5/18/2004 | ER | 1.50 | 3,500 | $5,250.00 |
| 5/18/2004 | ER | 1.50 | 10,000 | $15,000.00 |
| 5/18/2004 | ETMC | 1.50 | 16,500 | $24,750.00 |
| 5/18/2004 | GN | 1.50 | 2,000 | $3,000.00 |
| 5/18/2004 | HE | 1.50 | 3,500 | $5,250.00 |
| 5/18/2004 | HD | 1.50 | 4,500 | $6,750.00 |
| 5/18/2004 | HRK | 1.50 | 4,500 | $6,750.00 |
| 5/18/2004 | HRK | 1.50 | 7,500 | $11,250.00 |
| 5/18/2004 | PT | 1.50 | 665 | $997.50 |
| 5/18/2004 | PB | 1.50 | 20,500 | $30,750.00 |
| 5/18/2004 | RBD | 1.50 | 2,500 | $3,750.00 |
| 7/9/2004 | QP | 1.50 | 1,667 | $2,500.50 |
| 7/9/2004 | QR | 1.50 | 334 | $501.00 |
| 7/9/2004 | SS | 1.50 | 2,000 | $3,000.00 |
| 7/9/2004 | WJ | 1.50 | 334 | $501.00 |
| 7/9/2004 | WS | 1.50 | 1,667 | $2,500.50 |
| 7/26/2004 | ME | 1.50 | 700 | $1,050.00 |
| 7/26/2004 | PM | 1.50 | 900 | $1,350.00 |

# Appendix A

| Investment Date | Investor | Price | # of Shares | Total Investment |
|---|---|---|---|---|
| 7/26/2004 | WS | 1.50 | 1,400 | $2,100.00 |
| 7/27/2004 | HG | 1.50 | 5,000 | $7,500.00 |
| 7/27/2004 | KK | 1.50 | 1,000 | $1,500.00 |
| 7/27/2004 | SD | 1.50 | 3,500 | $5,250.00 |
| 7/27/2004 | SGE | 1.50 | 1,000 | $1,500.00 |
| 7/27/2004 | WDM | 1.50 | 5,000 | $7,500.00 |
| 7/28/2004 | VGS | 1.50 | 1,000 | $1,500.00 |
| 8/2/2004 | ER | 1.50 | 6,800 | $10,200.00 |
| 8/2/2004 | HN | 1.50 | 3,000 | $4,500.00 |
| 8/3/2004 | AHJ | 1.50 | 6,700 | $10,050.00 |
| 8/3/2004 | CS | 1.50 | 1,300 | $1,950.00 |
| 8/3/2004 | ETMC | 1.50 | 6,800 | $10,200.00 |
| 8/3/2004 | GN | 1.50 | 3,400 | $5,100.00 |
| 8/3/2004 | SE(SS) | 1.50 | 800 | $1,200.00 |
| 8/6/2004 | BD | 1.50 | 5,000 | $7,500.00 |
| 8/6/2004 | ML | 1.50 | 2,000 | $3,000.00 |
| 8/12/2004 | BB | 1.50 | 1,332 | $1,998.00 |
| 8/12/2004 | MKK | 1.50 | 6,000 | $9,000.00 |
| 8/12/2004 | RD | 1.50 | 3,320 | $4,980.00 |
| 8/17/2004 | NAE | 1.50 | 6,667 | $10,000.00 |
| 8/27/2004 | MW | 1.50 | 3,500 | $5,250.00 |
| 8/31/2004 | FJ | 1.50 | 3,000 | $4,500.00 |
| 9/23/2004 | KK | 1.50 | 1,000 | $1,500.00 |
| 9/23/2004 | PM | 1.50 | 1,000 | $1,500.00 |
| 10/5/2004 | MR | 1.50 | 250 | $375.00 |
| 10/6/2004 | CJ | 1.50 | 500 | $750.00 |
| 10/14/2004 | B(KB) | 2.00 | 1,000 | $2,000.00 |
| 10/14/2004 | B(LHS) | 2.00 | 100 | $200.00 |
| 10/14/2004 | BT3 | 2.00 | 20,000 | $40,000.00 |
| 10/19/2004 | CJ | 1.50 | 1,000 | $1,500.00 |
| 10/19/2004 | ER | 1.50 | 10,000 | $15,000.00 |
| 10/19/2004 | ETMC | 1.50 | 7,000 | $10,500.00 |
| 10/21/2004 | SJA | 2.00 | 5,000 | $10,000.00 |
| 10/21/2004 | SJGRLT | 2.00 | 10,000 | $20,000.00 |
| 11/10/2004 | BT3 | 2.00 | 10,000 | $20,000.00 |
| 11/11/2004 | SA | 2.00 | 600 | $1,200.00 |
| 11/15/2004 | FG | 2.00 | 1,000 | $2,000.00 |
| 11/15/2004 | PMA | 1.50 | 13,334 | $20,000.00 |
| 11/15/2004 | PJ | 2.00 | 2,500 | $5,000.00 |
| 11/16/2004 | RF | 2.00 | 1,000 | $2,000.00 |
| 11/16/2004 | BT3(HMS) | 2.00 | 500 | $1,000.00 |
| 11/16/2004 | BT3(KB) | 2.00 | 1,500 | $3,000.00 |
| 11/16/2004 | OR | 2.00 | 1,000 | $2,000.00 |
| 11/24/2004 | KCJ | 1.50 | 1,000 | $1,500.00 |
| 11/30/2004 | KCJ | 1.50 | 3,000 | $4,500.00 |
| 11/30/2004 | RF | 2.00 | 6,000 | $12,000.00 |
| 12/9/2004 | KPH | 1.50 | 1,000 | $1,500.00 |
| 12/15/2004 | BT3 | 2.00 | 10,000 | $20,000.00 |
| 12/16/2004 | KK | 1.50 | 10,000 | $15,000.00 |
| 12/16/2004 | KR | 1.50 | 600 | $900.00 |
| 12/16/2004 | OR | 1.50 | 1,500 | $2,250.00 |
| 12/22/2004 | KC | 1.50 | 2,000 | $3,000.00 |

# Appendix A

| Investment Date | Investor | Price | # of Shares | Total Investment |
|---|---|---|---|---|
| 12/28/2004 | BB | 1.50 | 2,000 | $3,000.00 |
| 12/28/2004 | LM | 1.50 | 4,000 | $6,000.00 |
| 12/31/2004 | AM | 2.00 | 2,000 | $4,000.00 |
| 1/4/2005 | KCE | 1.50 | 750 | $1,125.00 |
| 1/10/2005 | WS | 1.50 | 5000 | $7,500.00 |
| 1/19/2005 | FR | 1.50 | 5000 | $7,500.00 |
| 1/19/2005 | OR | 1.00 | 2000 | $2,000.00 |
| | | | | |
| TOTAL | | | 1,934,549 | $2,722,344.00 |
| | | | | - |
| (Note: Total does not include 110,000 shares paid in compensation to Perez and Poyner) | | | | |

# Appendix B

| Investment Date | Investor | # of Shares | Total Investment |
|---|---|---|---|
| 7/13/2004 | GoBB | 5,000 | $5,000.00 |
| 7/13/2004 | JDA (JDA) | 5,000 | $5,000.00 |
| 7/13/2004 | DAD (CMD) | 5,000 | $5,000.00 |
| 12/16/2004 | LPG3 | 4,000 | $4,000.00 |
| 12/16/2004 | JLM | 500 | $500.00 |
| 12/23/2004 | KK | 2,000 | $2,000.00 |
| 12/28/2004 | MEL | 1,000 | $1,000.00 |
| 12/28/2004 | RF | 5,000 | $5,000.00 |
| 12/28/2004 | DW | 4,000 | $4,000.00 |
| 12/28/2004 | SIA | 3,000 | $3,000.00 |
| 12/28/2004 | EH | 3,000 | $3,000.00 |
| 12/28/2004 | BB | 2,000 | $2,000.00 |
| 12/28/2004 | RCH | 2,000 | $2,000.00 |
| 12/28/2004 | LMW | 1,500 | $1,500.00 |
| 12/28/2004 | RGH | 1,000 | $1,000.00 |
| 12/28/2004 | DD | 1,000 | $1,000.00 |
| 12/28/2004 | LMF | 500 | $500.00 |
| 12/28/2004 | KK | 500 | $500.00 |
| 1/4/2005 | IK&AK | 3,500 | $3,500.00 |
| 1/4/2005 | AC&SC | 1,500 | $1,500.00 |
| 1/4/2005 | PK&HK3 | 1,000 | $1,000.00 |
| 1/4/2005 | CJK | 1,000 | $1,000.00 |
| 1/7/2005 | T&KR | 1,000 | $1,000.00 |
| 1/10/2005 | BP&MN | 26,000 | $26,000.00 |
| 1/19/2005 | LG | 3,000 | $3,000.00 |
| 1/19/2005 | SC(JRR) | 500 | $500.00 |
| 1/19/2005 | TL | 200 | $200.00 |
| 1/27/2005 | AJDJ | 1,000 | $1,000.00 |
| 2/1/2005 | DM&KM | 10,500 | $10,500.00 |
| 2/1/2005 | KM | 10,000 | $10,000.00 |
| 2/1/2005 | DEH | 5,000 | $5,000.00 |
| 2/1/2005 | RCM | 1,000 | $1,000.00 |
| 2/1/2005 | TGC | 800 | $800.00 |
| 2/1/2005 | R&KH | 500 | $500.00 |
| 2/11/2005 | CL | 700 | $700.00 |
| 2/18/2005 | YFT | 10,000 | $2,500.00 |
| 2/18/2005 | KK | 2,500 | $2,500.00 |
| 2/18/2005 | CKD | 2,000 | $2,000.00 |
| 2/18/2005 | SIA | 1,000 | $1,000.00 |
| 2/18/2005 | RJA | 500 | $500.00 |
| 2/18/2005 | KAA | 500 | $500.00 |
| 2/18/2005 | NJM | 500 | $500.00 |
| 2/22/2005 | DE | 7,500 | $7,500.00 |
| 2/22/2005 | JJE | 7,500 | $7,500.00 |
| 2/22/2005 | DLH | 6,000 | $6,000.00 |
| 2/22/2005 | RE(RE) | 2,000 | $2,000.00 |
| 2/22/2005 | RE(ME) | 2,000 | $2,000.00 |
| 2/22/2005 | MC&TE(MAE) | 1,000 | $1,000.00 |
| 2/22/2005 | MC&TE(CJE) | 2,000 | $2,000.00 |
| 2/22/2005 | CS | 2,000 | $2,000.00 |
| 2/22/2005 | RGH | 2,000 | $2,000.00 |
| 2/22/2005 | JE | 1,000 | $1,000.00 |
| 2/22/2005 | NEH | 1,000 | $1,000.00 |
| 2/22/2005 | NG(KG) | 500 | $500.00 |
| 2/23/2005 | ADH | 10,400 | $10,400.00 |

# Appendix B

| Investment Date | Investor | # of Shares | Total Investment |
|---|---|---|---|
| 2/23/2005 | DM&KM | 10,000 | $10,000.00 |
| 2/23/2005 | JCC | 5,100 | $5,100.00 |
| 2/23/2005 | DEH | 5,000 | $5,000.00 |
| 2/23/2005 | CPAS | 5,000 | $5,000.00 |
| 2/23/2005 | DMW | 5,000 | $5,000.00 |
| 2/23/2005 | FK&SL | 4,000 | $4,000.00 |
| 2/23/2005 | KK | 2,500 | $2,500.00 |
| 2/23/2005 | DDH/LFH | 2,000 | $2,000.00 |
| 2/23/2005 | DK | 2,000 | $2,000.00 |
| 2/23/2005 | EV | 1,000 | $1,000.00 |
| 2/23/2005 | RJW | 500 | $500.00 |
| 2/25/2005 | J&MD | 10,000 | $2,500.00 |
| 2/25/2005 | SBS | 2,500 | $2,500.00 |
| 2/25/2005 | DH | 1,000 | $1,000.00 |
| 2/25/2005 | CK | 500 | $500.00 |
| 2/25/2005 | KH(RH) | 500 | $500.00 |
| 3/1/2005 | R&JB | 2,000 | $2,000.00 |
| 3/4/2005 | BP&MN | 50,000 | $50,000.00 |
| 3/4/2005 | KM | 10,000 | $10,000.00 |
| 3/4/2005 | LG | 10,000 | $10,000.00 |
| 3/4/2005 | M&TK | 10,000 | $10,000.00 |
| 3/4/2005 | DE | 5,000 | $5,000.00 |
| 3/4/2005 | CJK | 4,000 | $4,000.00 |
| 3/4/2005 | IHK | 1,000 | $1,000.00 |
| 3/4/2005 | BMK | 500 | $500.00 |
| 3/4/2005 | KMK | 500 | $500.00 |
| 3/4/2005 | AMK | 500 | $500.00 |
| 3/4/2005 | BIK | 500 | $500.00 |
| 3/4/2005 | BJK | 500 | $500.00 |
| 3/4/2005 | KWBJ | 3,000 | $3,000.00 |
| 3/4/2005 | BT | 2,000 | $2,000.00 |
| 3/4/2005 | GT | 1,000 | $1,000.00 |
| 3/4/2005 | WEM | 2,500 | $2,500.00 |
| 3/4/2005 | PK/HK3 | 2,000 | $2,000.00 |
| 3/4/2005 | DV | 2,000 | $2,000.00 |
| 3/4/2005 | DCD | 2,000 | $2,000.00 |
| 3/4/2005 | DCD | 2,000 | $2,000.00 |
| 3/4/2005 | JNC | 1,250 | $1,250.00 |
| 3/4/2005 | CNK | 1,000 | $1,000.00 |
| 3/4/2005 | CNK | 1,000 | $1,000.00 |
| 3/4/2005 | CFB | 1,000 | $1,000.00 |
| 3/4/2005 | W&IJM | 1,000 | $1,000.00 |
| 3/4/2005 | JFF | 500 | $500.00 |
| 3/4/2005 | TML | 200 | $200.00 |
| 3/8/2005 | MFS | 25,000 | $25,000.00 |
| 3/8/2005 | GM&BM(MFTA) | 20,000 | $20,000.00 |
| 3/8/2005 | JJS | 5,000 | $5,000.00 |
| 3/8/2005 | WCS | 5,000 | $5,000.00 |
| 3/8/2005 | G&SB | 5,000 | $5,000.00 |
| 3/8/2005 | GWV | 5,000 | $5,000.00 |
| 3/8/2005 | MEJ | 4,000 | $4,000.00 |
| 3/8/2005 | KK | 3,500 | $3,500.00 |
| 3/8/2005 | VO&LC | 3,200 | $3,200.00 |

# Appendix B

| Investment Date | Investor | # of Shares | Total Investment |
|---|---|---|---|
| 3/8/2005 | TS | 3,000 | $3,000.00 |
| 3/8/2005 | JSS | 3,000 | $3,000.00 |
| 3/8/2005 | DE | 2,500 | $2,500.00 |
| 3/8/2005 | RH | 1,500 | $1,500.00 |
| 3/8/2005 | KK | 1,500 | $1,500.00 |
| 3/8/2005 | MO | 1,500 | $1,500.00 |
| 3/8/2005 | KRJ | 1,100 | $1,100.00 |
| 3/8/2005 | SA | 1,000 | $1,000.00 |
| 3/8/2005 | BRA | 1,000 | $1,000.00 |
| 3/8/2005 | RA | 1,000 | $1,000.00 |
| 3/8/2005 | MJF | 1,000 | $1,000.00 |
| 3/8/2005 | SJR | 750 | $750.00 |
| 3/8/2005 | TLD | 500 | $500.00 |
| 3/8/2005 | TLD | 500 | $500.00 |
| 3/8/2005 | CLR | 500 | $500.00 |
| 3/8/2005 | KS | 450 | $450.00 |
| 3/8/2005 | CL | 300 | $300.00 |
| 3/10/2005 | MP | 10,000 | $10,000.00 |
| 3/10/2005 | WPO | 10,000 | $10,000.00 |
| 3/10/2005 | R&MB | 10,000 | $10,000.00 |
| 3/10/2005 | ECS/GS | 5,000 | $5,000.00 |
| 3/10/2005 | G&SB | 5,000 | $5,000.00 |
| 3/10/2005 | RF | 5,000 | $5,000.00 |
| 3/10/2005 | WGV | 2,500 | $2,500.00 |
| 3/10/2005 | JJD | 1,000 | $1,000.00 |
| 3/10/2005 | JSD | 1,000 | $1,000.00 |
| 3/10/2005 | SL | 1,000 | $1,000.00 |
| 3/10/2005 | SM | 1,000 | $1,000.00 |
| 3/10/2005 | GJH | 1,000 | $1,000.00 |
| 3/10/2005 | RH | 750 | $750.00 |
| 3/16/2005 | GTL | 1,500 | $1,500.00 |
| 3/16/2005 | HM | 1,500 | $1,500.00 |
| 3/16/2005 | AC | 1,000 | $1,000.00 |
| 3/16/2005 | GTL | 1,000 | $1,000.00 |
| 3/16/2005 | D&CD | 1,000 | $1,000.00 |
| 3/16/2005 | M&JR | 750 | $750.00 |
| 3/16/2005 | KK/DZ | 500 | $500.00 |
| 3/16/2005 | JB | 500 | $500.00 |
| 3/16/2005 | JPR | 500 | $500.00 |
| 3/16/2005 | JWH | 500 | $500.00 |
| 3/16/2005 | DHC | 500 | $500.00 |
| 3/16/2005 | CJW | 500 | $500.00 |
| 4/5/2005 | DMW | 10,000 | $10,000.00 |
| 4/5/2005 | WP/AP | 10,000 | $10,000.00 |
| 4/5/2005 | DD/CD | 2,000 | $2,000.00 |
| 4/5/2005 | LBW | 1,500 | $1,500.00 |
| 4/5/2005 | DCS | 1,000 | $1,000.00 |
| 4/8/2005 | DAB | 10,000 | $10,000.00 |
| 4/8/2005 | DE | 10,000 | $10,000.00 |
| 4/8/2005 | DGT | 10,000 | $10,000.00 |
| 4/8/2005 | TSB | 10,000 | $10,000.00 |
| 4/8/2005 | B&SB | 10,000 | $10,000.00 |

# Appendix B

| Investment Date | Investor | # of Shares | Total Investment |
|---|---|---|---|
| 4/8/2005 | RWM | 10,000 | $10,000.00 |
| 4/8/2005 | RAW | 7,000 | $7,000.00 |
| 4/8/2005 | DD/CD | 6,000 | $6,000.00 |
| 4/8/2005 | IHK | 5,000 | $5,000.00 |
| 4/8/2005 | BIK | 500 | $500.00 |
| 4/8/2005 | WM&LM | 5,000 | $5,000.00 |
| 4/8/2005 | KI/NI | 5,000 | $5,000.00 |
| 4/8/2005 | KI/NI | 5,000 | $5,000.00 |
| 4/8/2005 | BB | 5,000 | $5,000.00 |
| 4/8/2005 | CAB | 5,000 | $5,000.00 |
| 4/8/2005 | JF | 5,000 | $5,000.00 |
| 4/8/2005 | CF | 500 | $500.00 |
| 4/8/2005 | JIM | 500 | $500.00 |
| 4/8/2005 | WM(DWM) | 500 | $500.00 |
| 4/8/2005 | SWB(MB) | 500 | $500.00 |
| 4/8/2005 | SWB(CB) | 500 | $500.00 |
| 4/8/2005 | TSW | 500 | $500.00 |
| 4/8/2005 | TSW(VW) | 500 | $500.00 |
| 4/8/2005 | TSW(AW) | 500 | $500.00 |
| 4/8/2005 | MF | 500 | $500.00 |
| 4/8/2005 | KMM | 500 | $500.00 |
| 4/8/2005 | PK/HK3 | 4,000 | $4,000.00 |
| 4/8/2005 | BN | 3,500 | $3,500.00 |
| 4/8/2005 | JMM | 3,000 | $3,000.00 |
| 4/8/2005 | JMM | 3,000 | $3,000.00 |
| 4/8/2005 | JB/JAB | 3,000 | $3,000.00 |
| 4/8/2005 | NW | 2,000 | $2,000.00 |
| 4/8/2005 | RJB | 2,000 | $2,000.00 |
| 4/8/2005 | KWBJ | 2,000 | $2,000.00 |
| 4/8/2005 | DJR | 1,500 | $1,500.00 |
| 4/8/2005 | JS/RS | 1,000 | $1,000.00 |
| 4/8/2005 | RGH | 1,000 | $1,000.00 |
| 4/8/2005 | C&FB | 1,000 | $1,000.00 |
| 4/8/2005 | CS | 1,000 | $1,000.00 |
| 4/8/2005 | JE | 1,000 | $1,000.00 |
| 4/8/2005 | SP | 1,000 | $1,000.00 |
| 4/8/2005 | DR | 1,000 | $1,000.00 |
| 4/8/2005 | JVC/MC | 700 | $700.00 |
| 4/14/2005 | GS/ECS | 4,000 | $4,000.00 |
| 4/15/2005 | BAK | 20,000 | $20,000.00 |
| 4/15/2005 | BK(KK) | 4,000 | $4,000.00 |
| 4/15/2005 | BK(PK) | 4,000 | $4,000.00 |
| 4/15/2005 | BK(RK) | 4,000 | $4,000.00 |
| 4/15/2005 | BK(JK) | 4,000 | $4,000.00 |
| 4/15/2005 | EM | 5,000 | $5,000.00 |
| 4/15/2005 | BRA | 4,500 | $4,500.00 |
| 4/15/2005 | WB/TB | 4,000 | $4,000.00 |
| 4/15/2005 | DJJ | 2,000 | $2,000.00 |
| 4/15/2005 | SIA | 1,500 | $1,500.00 |
| 4/15/2005 | KRJ | 1,100 | $1,100.00 |
| 4/15/2005 | TML | 1,000 | $1,000.00 |
| 4/15/2005 | TCS | 1,000 | $1,000.00 |

## Appendix B

| Investment Date | Investor | # of Shares | Total Investment |
|---|---|---|---|
| 4/15/2005 | JWG3 | 1,000 | $1,000.00 |
| 4/15/2005 | CK | 500 | $500.00 |
| 4/15/2005 | KRJ | 200 | $200.00 |
| 4/15/2005 | SVA | 200 | $200.00 |
| 4/15/2005 | PCF | 25 | $25.00 |
| 4/15/2005 | MC | 25 | $25.00 |
| 5/3/2005 | KK(AK) | 1,500 | $1,500.00 |
| 5/3/2005 | KK(BK) | 1,500 | $1,500.00 |
| 5/3/2005 | KK | 2,000 | $2,000.00 |
| 5/3/2005 | BJ&FCJ | 5,000 | $5,000.00 |
| 5/3/2005 | CC/AC | 1,000 | $1,000.00 |
| 5/25/2005 | IHK | 5,500 | $5,500.00 |
| 5/16/2005 | VLR | 2,000 | $2,000.00 |
| 5/16/2005 | VR/LR | 1,000 | $1,000.00 |
| 6/28/2005 | DMH/MEH | 5,000 | $5,000.00 |
| 6/28/2005 | NAC/JFC | 1,000 | $1,000.00 |
| 6/28/2005 | DHR | 1,000 | $1,000.00 |
| 6/28/2005 | DF | 1,000 | $1,000.00 |
| | | | |
| **TOTAL** | | 767,700 | $752,700.00 |