1  MARC J. FAGEL
   JOHN S. YUN (yunj@sec.gov)
2  SHEILA E. O'CALLAGHAN (ocallaghans@sec.gov)
   ELENA RO (roe@sec.gov)
3  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
4  44 Montgomery Street, Suite 2600
   San Francisco, California  94104
5  Telephone:  (415) 705-2500
   Telecopy:  (415) 705-2501

6

7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                    **OAKLAND DIVISION**

11

12

13  SECURITIES AND EXCHANGE COMMISSION,  )       Case Number
                                         )       C-06-6003-CW
14             Plaintiff,                )
                                         )       **PLAINTIFF SECURITIES**
15        vs.                            )       **AND EXCHANGE**
                                         )       **COMMISSION'S AND**
16  THE CHILDREN'S INTERNET, NASSER V.   )       **DEFENDANT CORT L.**
    HAMEDANI, SHOLEH A. HAMEDANI,        )       **POYNER'S JOINT**
17  PETER A. PEREZ, CORT L. POYNER and   )       **PROPOSED JURY**
    TWO DOG NET, INC.                    )       **INSTRUCTIONS**
18                                       )
               Defendants,               )       Time: 8:30 a.m.
19                                       )       Date: March 31, 2008
                                         )       Judge: Claudia Wilken
20

21

22

23

24

25

26

27

28

1

## PROPOSED JURY INSTRUCTIONS

2

           In accordance with the Court's case management and standing pretrial orders, plaintiff

3

Securities and Exchange Commission ("Commission") hereby submits its proposed jury instructions for

4

the trial of this case against defendant Cort L. Poyner.

5

DATED:    March 25, 2008

6

                                  Respectfully submitted,

7

8

                                  Marc J. Fagel
                                  John S. Yun

9

                                  Sheila E. O'Callaghan
                                  Elena Ro

10

                                  Attorneys for the Plaintiff
                                  SECURITIES AND EXCHANGE COMMISSION

11

12

13

                                  Thomas LoSavio
                                  Low, Ball & Lynch

14

                                  Attorneys for Defendant
                                  CORT L. POYNER

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

1. DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS)..................4

2. DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE.............................................................................................5

3. CLAIMS AND DEFENSES - THE SEC'S ALLEGATIONS..............................6

4. OVERVIEW OF THE DEFENDANT'S ALLEGATIONS AND DEFENSES................8

5. BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE......................9

6. OVERVIEW OF SOME BASIC TERMS OR PHRASES.................................10

7. WHAT IS EVIDENCE..........................................................................11

8. WHAT IS NOT EVIDENCE...................................................................12

9. EVIDENCE FOR LIMITED PURPOSE......................................................13

10. DIRECT AND CIRCUMSTANTIAL EVIDENCE.........................................14

11. RULING ON OBJECTIONS..................................................................15

12. CREDIBILITY OF WITNESSES............................................................16

13. CONDUCT OF THE JURY...................................................................17

14. NO TRANSCRIPT AVAILABLE TO JURY...............................................19

15. TAKING NOTES..............................................................................20

16. QUESTIONS TO WITNESSES BY JURORS............................................21

17. OUTLINE OF TRIAL.........................................................................23

18. STIPULATIONS OF FACT..................................................................24

19. JUDICIAL NOTICE...........................................................................25

20. DEPOSITION IN LIEU OF LIVE TESTIMONY.........................................26

21. TRANSCRIPT OF TAPE RECORDING...................................................27

22. EXPERT OPINION...........................................................................28

23. CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE.......................29

24. CHARTS AND SUMMARIES IN EVIDENCE............................................30

25. IMPEACHMENT - MATERIAL FALSEHOOD...........................................31

26. DRAWING REASONABLE INFERENCES................................................32

27. DUTY TO DELIBERATE....................................................................33

Proposed Jury Instructions
C-06-6003-CW

**28. COMMUNICATION WITH COURT**......................................................................34

**29. RETURN OF VERDICT**................................................................................35

**30. FIFTH AMENDMENT PRIVILEGE**......................................................................36

**31. SALE OF SECURITIES BY UNREGISTERED BROKER**.................................................37

**31A. DISTINCTION BETWEEN DEALER AND TRADER**......................................................39

**31B. DISTINCTION BETWEEN BROKER AND FINDER**......................................................40

**32. CLAIM FOR SELLING UNREGISTERED SECURITIES**.................................................41

**33. FIRST ELEMENT: TCI SHARES WERE NOT REGISTERED**..............................................42

**34. SALE, OFFER, OR DELIVERY OF TCI SHARES**......................................................43

**35. PRIMARY VIOLATIONS FOR SECURITIES FRAUD**....................................................44

**36. VIOLATION OF SECTION 17(a)(2) AND (3) OF SECURITIES ACT**....................................46

### PRELIMINARY INSTRUCTIONS

## 1. DUTY OF JURY (COURT READS AND
## PROVIDES WRITTEN INSTRUCTIONS)

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set throughout the trial to which to refer. This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

### Comment

Instruction 1.1A may be used as a preliminary instruction if the court decides to provide a written set of preliminary instructions at the beginning of the trial which the jurors are permitted to keep with them. In the final set of instructions, the court should substitute Instruction 1.1C.

## 2. DUTY OF JURY (COURT READS AND PROVIDES
## WRITTEN INSTRUCTIONS AT END OF CASE)

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you as to the law of the case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent with you to the jury room when you deliberate.]

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

### Comment

Instruction 1.1C should be used with the written final set of the instructions to be sent to the jury. Bracketed material should be selected to cover whether single or multiple sets of written instructions are provided.

# 3. CLAIMS AND DEFENSES

## The SEC's Allegations

To help you follow the evidence, I will give you a brief overview of the allegations and defenses in this trial. Before I do so, let me give you some general background information about the parties.

The Plaintiff is the United States Securities and Exchange Commission ("SEC"), an agency of the United States government, which Congress has authorized to bring civil actions to enforce the federal securities laws. The defendant in this case is Cort L. Poyner ("Poyner"). Poyner is the sole officer, director and shareholder of Onyx Holdings, which is sometimes referred to as Onyx Securities.

As I will describe a little more fully, this case concerns Mr. Poyner's alleged involvement in the sale of securities by a company called The Children's Internet, or "TCI."

A security is an investment of money in a commercial, financial or other business enterprise, with the expectation of profit or other gain produced by the efforts of others. Some common types of securities are stocks, bonds, debentures, warrants, and investment contracts. In this case, the "security" involved is the common stock of TCI.

The SEC alleges that Poyner illegally sold securities of TCI from January 2002 until around the Fall of 2002. His sales were illegal because he was not registered as a broker with the SEC, which the SEC alleges he was required to be under the law. Additionally, Mr. Poyner is alleged to have participated in offering and selling shares to investors while the shares were not registered for sale with the SEC and were not exempt from being registered, which the SEC also alleges was required under the law.

The SEC alleges that the defendant sold TCI shares by making false statements to the investors and failing to tell them important information about their investment. In particular, Poyner kept from investors information about where their money went and how much of it he personally received.

The SEC further alleges that Poyner made false representations to the investors about how quickly they would be able to sell their shares on a public securities exchange and make a profit. In fact, during the time period when Mr. Poyner was offering or selling the TCI shares, the process had not even begun for registering those TCI shares so that they could be sold on a securities market. TCI did not have an effective registration statement for selling its shares until May 2004 and TCI's shares did not begin trading in a public market until February 2005.

1

**Authority**

2

3  *See* Ninth Circuit Model Civil Jury Instructions, 2007 edition ("Model Jury Instructions"), Section 1.2
4  Claims and Defenses, and Section 18.0 Securities - Definition of Recurring Terms.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4. Overview of the Defendant's Allegations and Defenses

Defendant Poyner denies the SEC's allegations and contends by way of his defense as follows:

Defendant Poyner contends that he acted as a finder and a trader, that is a person who introduces parties to a transaction and who trades for his own account, and not as a broker or dealer required to be registered.  Mr. Poyner further contends that he made no illegal sales of securities and that he made no false or misleading statements to investors.

### Authority

*See* Model Jury Instructions, Section 1.2 Claims and Defenses.

## 5.  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

### Comment

This instruction may not apply to cases based on state law.

### 6. Overview of Some Basic Terms or Phrases

During their opening statements, counsel for each party will have the opportunity to describe to you some of the basic transactions that are involved in this case. So that you might better understand their opening statements and the evidence in this case, the Court wishes to provide you with a description of some of the basic terms and phrases that you will be hearing:

A "publicly reporting company" is a company that files periodic reports on a quarterly and annual basis with the SEC. For a small business such as TCI, the company must file a "Form 10-KSB" once a year following the end of the fiscal year for which the report is being filed. In this case, TCI's's fiscal year was the same as a calendar year and ran from January 1 to December 31. A small business like TCI must also file a "Form 10-QSB" three times per year with the SEC, with respect to the first, second and third fiscal quarters of the year.

A "publicly trading company" must be a publicly reporting company that makes the necessary filings of its annual and quarterly reports with the SEC. Additionally, the company must satisfy the requirements for being listed on an exchange such as the New York Stock Exchange or the NASDAQ so that the company's shares can be bought and sold by public investors in a securities market. In this case, the exchange that TCI wanted to list its shares on is called the "OTC Bulletin Board."

# 7. WHAT IS EVIDENCE

The evidence from which you are to decide what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which have been received into evidence; and

(3) any facts to which the lawyers have agreed.

## Authority

*See* Model Jury Instructions, Section 1.6 What is Evidence.

# 8. WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, [will say in their] closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## Authority

*See* Model Jury Instructions, Section 1.7 What is Not Evidence.

## 9.  EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and for no other purpose.]

### Comment

As a rule, limiting instructions need only be given when requested and need not be given *sua sponte* by the court.  *United States v. McLennan*, 563 F.2d 943, 947–48 (9th Cir.1977), *cert. denied*, 435 U.S. 969 (1978).

*See United States v. Marsh*, 144 F.3d 1229, 1238 (9th Cir.) (when the trial court fails to instruct the jury in its final instructions regarding the receipt of evidence for a limited purpose, the Ninth Circuit examines the trial court's preliminary instructions to determine if the court instructed the jury on this issue), *cert. denied*, 525 U.S. 973 (1998).

*See also* Instructions 1.7 (What is Not Evidence) and 2.8 (Impeachment Evidence—Witness).

## 10. DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

### Comment

It may be helpful to include an illustrative example in the instruction:

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

## 11. RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

Proposed Jury Instructions
C-06-6003-CW

## 12. CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Proposed Jury Instructions
C-06-6003-CW

## 13. CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the [bailiff] [clerk] [law clerk] to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

### Comment

An abbreviated instruction should be repeated before the first recess and as needed before other recesses.

The practice in federal court of instructing jurors not to discuss the case until deliberations is widespread. *See, e.g., United States v. Pino–Noriega*, 189 F.3d 1089, 1096 (9th Cir.) ("There is a reason that most judges continually admonish their juries during trials not to discuss the evidence or begin deliberations until told to do so, after all of the evidence, argument, and instruction on the law has been received."), *cert. denied*, 528 U.S. 989 (1999).

State court practice in some jurisdictions does allow discussion.

1     If the court decides to allow discussion, substitute the following language for the final
2  paragraph of the instruction:

3     You may discuss with fellow jurors the testimony as it is presented, provided that all jurors are
4  present for the discussion.  You are to keep an open mind throughout the case until you have fully
   deliberated.

## 14.  NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

### Comment

The practice of discouraging readbacks of testimony has been criticized in *United States v. Damsky*, 740 F.2d 134, 138 (2d Cir.), *cert. denied*, 469 U.S. 918 (1984).  *See also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 5.2.D (2004).

The court may wish to repeat this instruction in the instructions at the end of the trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 15. TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

### Comment

It is well settled in this circuit that the trial judge has discretion to allow jurors to take notes. *United States v. Baker*, 10 F.3d 1374, 1403 (9th Cir.1993), *cert. denied*, 513 U.S. 934 (1994). *See also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 3.4 (2004).

**[Note: Defendant Poyner objects to juror question but, if it is allowed, has no objection to this instruction.]**

## 16. QUESTIONS TO WITNESSES BY JURORS

### Comment

Whether to allow jurors to ask questions is a subject debated among judges. Many state courts have modified their past practice and now allow questions by jurors. If a judge decides to allow questions, the following instruction and procedure is suggested.

### INSTRUCTION

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

### PROCEDURES

In the event the court allows jurors to submit questions for witnesses the committee recommends that judges use the following procedures:

1.  At the conclusion of each witness's testimony, the court asks if jurors have written questions, which are brought to the judge;

2   Outside the presence of the jury, counsel are given the opportunity to make objections to the question or to suggest modifications to the question, by passing the written question between counsel and the court during a side-bar conference or by excusing jurors to the jury room;

3.  The judge asks the question of the witness;

4.  Counsel are permitted to ask appropriate follow-up questions; and

5.  The written questions are made part of the record.

Each court is encouraged to develop a form for juror use. The form makes it easier for the court to retain the question for inclusion in the court record.

The form should include the case name and number. Most of the form's page should be set aside for the juror to use in writing the proposed question. A section should also be reserved for the court to use in noting the date and time when the question was proposed and noting whether the judge allowed the question to be asked, either as proposed or as revised. The form may also be used to provide jurors with additional information, or even just a reminder, about the procedures discussed in this instruction.

## 17. OUTLINE OF TRIAL

Trials proceed in the following way:  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Proposed Jury Instructions
C-06-6003-CW

## 18.  STIPULATIONS OF FACT

The parties have agreed to certain facts [to be placed in evidence as Exhibit ___] [that will be read to you]. You should therefore treat these facts as having been proved.

### Comment

When parties enter into stipulations as to material facts, those facts will be deemed to have been conclusively proved, and the jury may be so instructed. *United States v. Mikaelian*, 168 F.3d 380, 389 (9th Cir.1999) (citing *United States v. Houston*, 547 F.2d 104, 107 (9th Cir.1976)), *amended by* 180 F.3d 1091 (9th Cir.1999).

## 19. JUDICIAL NOTICE

The court has decided to accept as proved the fact that [*state fact*], even though no evidence has been introduced on the subject.  You must accept this fact as true.

### Comment

An instruction regarding judicial notice should be given at the time notice is taken.  In civil cases, Fed. R. Evid. 201(g) permits the judge to determine that a fact is sufficiently undisputed to be judicially noticed and requires that the jury be instructed that it is required to accept that fact.  *But see United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir.1994) (in a criminal case, "the trial court must instruct 'the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.'") (citing Fed. R. Evid. 201(g)); NINTH CIRCUIT MODEL CRIMINAL JURY INSTRUCTION 2.5 (2003) (Judicial Notice).

## 20. DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

The deposition of [*witness*] was taken on [*date*]. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

### Authority

*See* Model Jury Instructions, Section 2.4 Deposition in Lieu of Live Testimony.

## 21. TRANSCRIPT OF TAPE RECORDING

You [are about to listen] [have listened] to a tape recording that has been received in evidence. [Please listen to it very carefully.] Each of you [has been] [was] given a transcript of the recording to help you identify speakers and as a guide to help you listen to the tape. However, bear in mind that the tape recording is the evidence, not the transcript. If you [hear] [heard] something different from what [appears] [appeared] in the transcript, what you heard is controlling. After the tape has been played, the transcript will be taken from you.

### Comment

*See United States v. Franco*, 136 F.3d 622, 626 (9th Cir.1998) (the recording itself is the evidence to be considered; the transcript is merely an aid).

*See United States v. Delgado*, 357 F.3d 1061, 1070 (9th Cir. 2004) (court instructed jury that transcripts were only aids to understanding and that the recordings themselves were evidence).

The committee recommends that this instruction be given immediately before a tape recording is played so that the jury is alerted to the fact that what they hear is controlling. It need not be repeated if more than one tape recording is played.  It is good practice to remind the jury that the tape recording and not the transcript is the evidence, and that they should disregard anything in the transcript that they do not hear.

*See* Instructions 2.6 (Transcript of Recording in Foreign Language), and 2.7 (Foreign Language Testimony).

## 22.  EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### Comment

*See* Fed. R. Evid. 602, 701–05.

### 23. CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not received in evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

### Authority

*See* Model Jury Instructions, Section 2.12 Charts and Summaries Not Received in Evidence.

## 24. CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## **Authority**

*See* Model Jury Instructions, Section 2.13 Charts and Summaries in Evidence.

## 25. IMPEACHMENT - MATERIAL FALSEHOOD

As stated above, you are to determine a witness' credibility and to decide whether some or all of a witness' testimony has been untruthful.  In the event, however, that you find that the Defendant intentionally testified falsely about a material fact relating to this case -- that is, about a significant event or issue -- then you are free to consider that dishonesty to be affirmative evidence of the Defendant's liability.

### Authority

See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105, 120 (2000) (citing *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992)).

## 26. DRAWING REASONABLE INFERENCES

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw – but not required to draw – from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

### Authority

Adapted from 4 L. SAND, *ET AL.*, MODERN FEDERAL JURY INSTRUCTIONS ¶ 75.01, Inst. 75-1 (2000).

# CONCLUDING INSTRUCTIONS

## 27. DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

### Authority

*See* Model Jury Instructions, Section 3.1 Duty to Deliberate.

## 28. COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

### Authority

*See* Model Jury Instructions, Section 3.2 Communication with Court.

## 29. RETURN OF VERDICT

A verdict form has been prepared for you. [*Any explanation of the verdict form may be given at this time.*] After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

### Commentary

*See* Model Jury Instructions, Section 3.3 Return of Verdict.

<u>Plaintiff's Disputed Jury Instruction</u>

### 30. FIFTH AMENDMENT PRIVILEGE

During the trial of this case, you heard defendant Poyner refuse to answer certain questions based upon his/her Fifth Amendment privilege against self-incrimination. The Fifth Amendment privilege against self-incrimination allows any witness in a criminal or civil case to remain silent so that their statements cannot be used against them.

Although entitled by the Fifth Amendment to remain silent, a party in a civil case would normally provide testimony in support of their claims and defenses, particularly if the testimony relates to a matter within the party's personal knowledge. As the fact finders in this case, you are allowed to – but not required to – treat a party's refusal to answer a question on Fifth Amendment grounds as creating an inference that if the party had testified, his or her testimony would have been harmful to their defense. In deciding whether to draw such an adverse inference against a party for refusing to answer a question on Fifth Amendment grounds, you should consider the totality of the circumstances.

### Authority

*See* 4 L. Sand, et al., *Modern Federal Jury Instructions* ¶ 75.01, Inst. 75-5 (Civil) (2002) (modified); *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof").

Plaintiff's Disputed Jury Instruction

**31. SALE OF SECURITIES BY UNREGISTERED BROKER**

The SEC alleges that Poyner violated the Securities Exchange Act requirement that persons engaged in business as a broker who use the mails to effect any transactions in the sale of securities must be registered with the SEC as a broker. A broker buys and sells securities for clients, usually for a commission.

In order to find in favor of the SEC and against Poyner for failing to register as a broker, you must be satisfied that the SEC has established, by a preponderance of the evidence, the following:

First:  That Poyner was not registered with the SEC or any agency or entity with whom persons register as brokers;

Second:  That Poyner used or caused to be used the mails or other means of interstate commerce, in an offer or sale of securities, such as the telephone, fax, email or Internet; and

Third:  That Poyner was engaged in the business of effecting transactions in securities for the accounts of others as a "broker," and that Poyner effected transactions in TCI shares, or caused or attempted to cause others to purchase or sell TCI shares. You may consider the following factors as indicating that Poyner regularly effected securities transactions so that he had a duty to register as a broker:

1.  Whether Poyner's compensation was in the form of commission payments (that is a portion of the money raised), rather than an employee's salary or wage.

2. Whether Poyner actively participated in locating investors to purchase TCI stock, or stock of other companies.

3. Whether Poyner made recommendations to potential investors regarding the purchase of TCI stock, or

4. Whether Poyner solicited the purchase of the stock of other companies besides TCI.

5. Whether Poyner was actively involved in negotiations between potential

Proposed Jury Instructions
C-06-6003-CW

1    investors and TCI.

2

3          **Of these factors, the most important is whether he was receiving payment**
4    **based upon the amount of money raised.  The SEC does not need to prove that Poyner was**
     **aware that he was violating the broker registration requirement.  It is no defense that**
5    **Poyner did not know he was required to register. [Disputed by Defendant]**

6                                            **Authority**

7

8          *See* Model Jury Instructions, Section 18.0 Securities - Definition of Recurring
9    Terms; 15 U.S.C. § 78o(a); *Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357, 361-62
     (5th Cir. 1968), *cert. denied*, 393 U.S. 913 (1968) (stating purpose of Section 15(a)(1) and holding
10   that Section 15(a) contains no language requiring scienter); *SEC v. Randy*, 38 F. Supp. 2d 657,
     667 (N.D. Ill. 1999) (scienter is not an element of a violation of Section 15(a)); *SEC v. United*
11   *Monetary Serv., Inc.*, 1990 WL 91812 * 8 (S.D. Fla. 1990) (same); *SEC v. Friendly Power Co.*
12   *LLC*, 49 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999) (stating in analogous context of Section 5:
     "[N]either a good faith belief that the offers or sales in question were legal, nor reliance on the
13   advice of counsel, provides a complete defense . . . ."); *SEC v. Holshuh*, 694 F.2d 130, 137 n.10
     (7th Cir. 1982) (good faith is irrelevant to violation of registration provisions); Securities Act Rel.
14   No. 748, Exchange Act Rel. No. 605 (April 17, 1936), 1936 SEC LEXIS 579 (quoting S. Rep.
     No. 702, 73rd Cong., 2d Sess. 17) (as used in the Exchange Act, the term "effect" "refers to
15   participation in a transaction whether as principal, agent or both").  *SEC v. Hansen*, 1984 U.S
     Dist. LEXIS 17835 at *25-26 (S.D.N.Y. 1984) (providing factors to determine whether engaged
16   in securities transactions for others), *cited and followed in*, *SEC v. Airtrac*, Case No. SACV-06-
     582-JVS (RNBx), slip op. at 15-16 (C.D. Cal. Jan. 2, 2008)( following *Hansen* in granting
17   summary judgment that defendants acted as unregistered brokers).  *See SEC v. Bremont*, 954 F.
     Supp. 726 (S.D.N.Y. 1997) (holding that the federal securities laws protect investors from
18   schemes so fraudulent that the underlying paper does not exist);  *SEC v. Lauer*, 52 F.3d 667, 670
19   (7th Cir. 1995) (reasoning that the lack of more than a single investor should not grant promoters
     immunity from the federal securities laws); *Massachusetts Fin. Servs., Inc. v. Securities Investor*
20   *Protection Corp.*, 411 F. Supp. 411, 415 (D. Mass. 1976), *aff'd*, 545 F.2d 754 (1st Cir. 1976), cert.
     denied, 431 U.S. 904 (1977);  *SEC v. Kenton Capital*, Ltd., 69 F. Supp.2d 1, 12-13 (D.D.C. 1998)
21   (regularity of participation; citing cases); SL075 ALI-ABA 99 at *106 (January 2006).

22

23

24

25

26

27

28

Defendant's Disputed Jury Instruction

**31A. Distinction Between Dealer and Trader**

A person or entity is not required to be registered as a securities dealer if the person or entity buys or sells securities for his or its own account, either individually or in some fiduciary capacity, but not as a part of a regular business.

15 U.S.C. §78c(a)(5); Poser and Fanto, <u>Broker-Dealer Law and Regulation, 4th Ed.</u> (Aspen Publishers) §5.02(G), p. 5-26 and fol.

1

<u>Defendant's Disputed Jury Instruction</u>

2

3

**31B. Distinction Between Broker and Finder**

4

5

A finder is a person who does not effect a securities transaction but only brings together parties who may engage in one.

6

7

8

See, May-Pac Management Co., SEC No-Action Letter, [1973-1974 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶79,679 (Dec. 20, 1973) and Poser and Fanto, <u>Broker-Dealer Law and Regulation, 4th Ed.</u> (Aspen Publishers), Vol. 1, §5.02(D), p.5-13 and fol.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 32. CLAIM FOR SELLING UNREGISTERED SECURITIES

The SEC's next claim is that Poyner illegally sold or offered to sell securities which were not registered with the SEC - a violation of Section 5 of the Securities Act. The requirement that securities be registered with the SEC serves a purpose similar to that of the requirement that brokers be registered. Therefore, this requirement is also of the utmost importance in carrying out the purpose of the securities laws.

In order to prevail on this charge, the SEC must prove by a preponderance of the evidence the following three facts:

First: That no registration statement was in effect as to the TCI shares that were being offered or sold at the time alleged in the Complaint;

Second: That Poyner, directly or indirectly, sold or offered to sell TCI shares to investors; and

Third: That someone used interstate transportation or communication or the mails in connection with the sale, offer to sell, or delivery of the TCI shares. As I explained to you earlier, a person uses, or causes to be used, the mails or interstate commerce, by using the mails, the telephone, faxes or other electronic transmission of documents, such as email or the Internet.

You should note that, as was the case with the claim that Poyner failed to register as a broker, the SEC does not have to show that Poyner acted with any particular state of mind. All that is required for the SEC to prevail is that Poyner sold, offered, or delivered TCI shares and in so doing used interstate transportation or communication. It is no defense that Poyner did not know he had to register the TCI shares or that he relied on the advice of a lawyer who told him that the shares did not need to be registered.

### Authority

Securities Act §§ 5(a) and (c)) [15 U.S.C. §§ 77e(a),(c)©)]; *SEC v. Tuchinsky*, 1992 WL 226302 * 2 (S.D. Fla. 1992) (listing elements of Section 5 and holding it is no defense that defendant tried to register and did not know securities were unregistered); *Swenson v. Engelstad*, 626 F.2d 421, 424-25 (5th Cir. 1980) (listing elements); *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 156 (5th Cir. 1972) (same); *SEC v. Friendly Power Co. LLC*, 49 F. Supp. 2d 1363, 1367-68 (S.D. Fla. 1999) (Section 5 does not require negligence or scienter, and reliance on counsel is not a defense as to liability).

**33. FIRST ELEMENT: TCI SHARES WERE NOT REGISTERED**

The first element is that the SEC needs to prove is that the TCI shares were not registered as securities with the SEC at the time that Poyner was allegedly offering or selling those shares to investors. There is no dispute that a registration statement was not filed before February 2003 and that TCI's shares were not covered by an effective registration statement until August 2004. Therefore, you must take this element of the SEC's Section 5 claim as having been proven as to Poyner with respect to the offer and sales taking place before February 2003.

**Authority**

The SEC anticipates that this factual issue will not be disputed at trial.

## 34. SALE, OFFER, OR DELIVERY OF TCI SHARES

The second fact that the SEC must prove by a preponderance of the evidence is that the Poyner, directly or indirectly, sold or offered to sell TCI shares.

The SEC need not prove that Poyner had direct contact with any of the investors. If you find that Poyner employed or directed others to sell or offer to sell securities, or if you find that Poyner conceived of and planned the scheme by which the unregistered securities were offered or sold, then the SEC has satisfied this element. All that is required for the SEC to prevail on this element is that you find that the defendants were necessary participants or a substantial factor in the sale or offering of TCI shares.

### Authority

*SEC v. Friendly Power Co. LLC*, 49 F. Supp. 2d 1363, 1371-72 (S.D. Fla. 1999). *See also SEC v. Holschuh*, 694, F.2d 130, 139-40 (7th Cir. 1982) ("Defendants have been held liable [under Section 5] where they have been a 'necessary participant' and 'substantial factor' in the offer and sale of unregistered securities"); *SEC v. Murphy*, 626 F.2d 633, 649-52 (9th Cir. 1980) (same).

Plaintiff's Disputed Jury Instruction

## 35. PRIMARY VIOLATIONS FOR SECURITIES FRAUD

The SEC alleges that Poyner committed securities fraud, in violation of Section 10(b) of the Exchange Act and 17(a)(1) of the Securities Act, in connection with the sale of TCI shares to investors during the period of January 2002 to September 2002. To prevail on this claim, the SEC must have established by a preponderance of the evidence:

> 1. That Poyner made, **directly or indirectly[disputed by defendant]**, one or more false or misleading statements of material fact, or omitted to state material facts;

> 2. That the misrepresentations or omissions of material fact were made in connection with the sale of securities under Section 10(b), or the offer or sale of securities under Section 17(a)(1);

> 3. That Poyner made the misrepresentations and omissions of material facts knowingly or recklessly, and;

> 4. That interstate commerce, the mails, or a facility of a national securities exchange were used.

A misrepresentation is a statement of material fact that is false or misleading when it is made. **A statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.[disputed by defendant]**

An omission is a failure to disclose a material fact that had to be disclosed to prevent other statements that were made from being misleading.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether or not to buy or sell that security.

An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to [him] [her] as having significantly altered the total mix of information [he] [she] took into account in deciding whether to buy or sell the security.

**Payments to a broker for selling a company's stock may be material information. Additionally, a statement that a company will list its shares on a stock exchange can also be material information.[disputed by defendant]**

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

The second element is that the false or misleading statements or omissions of fact were made "in connection with" the sale of securities. If you find that there was a relation between the allegedly fraudulent conduct and the sale of TCI shares, then you should find that the statement or omission was "in connection with" a sale. **To prove a relation, the SEC need**

1  **only prove that the sale "touched" upon the transaction involving the fraud.[disputed by**
2  **defendant]**

3  The third element of the securities fraud claim is that Poyner made the false or misleading
   statements and omissions of material facts knowingly or recklessly. A defendant acts
4  knowingly when he makes an untrue statement with the knowledge that the statement was
   false or with reckless disregard for whether the statement was true. A defendant acts
5  knowingly if he omits necessary information with the knowledge that the omission would
   make the statement false or misleading or with reckless disregard for whether the omission
6  would make the statement false or misleading. "Reckless" means highly unreasonable conduct
   that is an extreme departure from ordinary care, presenting a danger of misleading investors,
7  which is either known to the defendant or is so obvious that the defendant must have been
   aware of it.
8

9  To establish the fourth element, the SEC must show that interstate commerce, the mails, or a
   facility of a national securities exchange were involved in the false or misleading statements,
10 or omissions of material facts. The use of an "instrumentality of interstate commerce" means,
   for example, the use of the mails, the telephone, faxes or other electronic transmission of
11 documents, such as email, the internet or a national securities exchange. It is not necessary
   that a misrepresentation or omission occur during the use of the mail, telephone, faxes or other
12 electronic transmission. All that is required is that those methods be used by anyone in some
   phase of the transaction.
13

14
                                    **Authority**
15

16      *See* Model Jury Instructions, Sections 18.0 Securities - Definition of Recurring Terms,
   18.2 - Securities - Misrepresentations or Omissions - Materiality, 18.3 - Securities -
17 Knowingly; 3B O'Malley, Grenig, & Lee, *Federal Jury Practice and Instructions (Civil)* §
   162.230 (5th Ed. 2002) (modified); 4 L. Sand, et al., *Modern Federal Jury Instructions* 82.01,
18 Inst. 82-3 (Civil) (2002) (modified) (omitting references to reliance and injury, which the
   Commission need not show). *Abrams v. Oppenheimer Gov't Sec., Inc.*, 737 F.2d 582, 593
19 (7th Cir. 1984) ("in connection with" requires some nexus but not necessarily a direct and
   close relationship). *See S.E.C. v. Rana Research, Inc.*, 8 F.3d 1358, 1363-64 (9th Cir. 1993));
20 3 L. Sand, et al., *Modern Federal Jury Instructions* 57.02, Inst. 57-15 (Criminal) (2002)
   (modified). *See also S.E.C. v. Dain Rauscher, Inc.*, 254 F.2d 852, 855-56 (9th Cir. 2001);
21 *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1063 (9th Cir. 2000); *S.E.C. v. First Jersey*
22 *Securities, Inc.*, 101 F.3d 1450, 1467 (2nd Cir. 1996); Section 10(b) of the Exchange Act of
   1934, 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; *SEC v. Softpoint, Inc., et al.*,
23 958 F. Supp. 846, 863 (S.D.N.Y. 1997) (company's payments to brokerage firms were omitted
24 from the press releases and SEC filings and were "material information"); *Miller v. Thane*
   *International, Inc., et al.*, — F.3d —, 2008 WL 706858 at *10 (9th Cir. Mar. 18, 2008).
25

26

27

28

Plaintiff's Disputed Jury Instruction

### 37. VIOLATION OF SECTION 17(a)(2) and (3) OF SECURITIES ACT

The SEC also claims that Poyner is liable for a different but similar violation of the Securities Act, for sections 17(a)(2) and (3), which is similar to but not the same as the fraud claim I just described to you. With respect to any misrepresentations or omissions, if you find that the SEC has established by a preponderance of the evidence all of the elements of fraud except that Poyner did not act knowingly or recklessly, then you may still find that Poyner violated the Securities Act, so long as you find that he was negligent in making a misrepresentation or omission.

I will now explain what negligence is. It is different from the states of mind I previously instructed you about, namely "knowledge" and "recklessness." **"Negligence" involves a lesser standard of wrongful intent and culpable state of mind than the "knowledge" or "recklessness" that is required to prove a violation of Section 10(b) of the Exchange Act or Section 17(a)(1) of the Securities Act.[disputed by defendant]** Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, when prompted by considerations which ordinarily regulate the conduct of human affairs. It is, in other words, the failure to use ordinary care under the circumstances. Ordinary care is that care which reasonably prudent persons exercise in the management of their own affairs, in order to avoid injury to themselves or their property, or the persons or property of others. Ordinary care is not an absolute term, but a relative one. That is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in the light of all the surrounding circumstances, as shown by the evidence in the case.

### Authority

*Aaron v. SEC*, 446 U.S. 680, 695-702 (1980) (scienter is not an element of Section 17(a)(2) and 17(a)(3) and a showing of negligence will suffice); *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 453-54 (3d Cir. 1997) (SEC need only prove negligence for Section 17(a)(2) and (a)(3); 4 E. Devitt, et al., Federal Jury Practice and Instructions § 80.03, 80.04, 80.05. 80.06 (4th ed. 1987).