**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,             No. C 06-6003 CW

      Plaintiff,

    v.                                          PRELIMINARY JURY
                                                INSTRUCTIONS

CORT L. POYNER,

      Defendant.

_____/

## DUTY OF THE JURY

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial and refer to it. This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what

**United States District Court**

For the Northern District of California

1  your verdict should be.

2      It is your duty to find the facts from all the evidence in the

3  case.  To those facts you will apply the law as I give it to you.

4  You must follow the law as I give it to you whether you agree with

5  it or not.  And you must not be influenced by any personal likes or

6  dislikes, opinions, prejudices, or sympathy.  That means that you

7  must decide the case solely on the evidence before you.  You will

8  recall that you took an oath to do so.

9      In following my instructions, you must follow all of them and

10  not single out some and ignore others; they are all important.

11                          **CLAIMS AND DEFENSES**

12      **A.   General Background**

13      To help you follow the evidence, I will first give you some

14  general background information about the parties and explain some

15  of the basic terms and phrases that you will be hearing.

16      The Plaintiff is the United States Securities and Exchange

17  Commission, or the SEC, an agency of the United States government,

18  which Congress has authorized to bring civil actions to enforce the

19  federal securities laws.  The Defendant in this case is Cort L.

20  Poyner.

21      This case concerns Mr. Poyner's alleged involvement in the

22  sale of securities by a company called The Children's Internet, or

23  TCI.

24      A security is an investment of money in a commercial,

25  financial or other business enterprise, with the expectation of

26  profit or other gain produced by the efforts of others.  Some

27  common types of securities are stocks, bonds, debentures, warrants,

28                                  2

and investment contracts.   In this case, the "security" involved is the common stock of TCI.

A "publicly reporting company" is a company that files periodic reports on a quarterly and annual basis with the SEC.   A small business such as TCI must file a "Form 10-KSB" once a year following the end of the fiscal year for which the report is being filed.   In this case, TCI's fiscal year was the same as a calendar year and ran from January 1 to December 31.   A small business like TCI must also file a "Form 10-QSB" three times per year with the SEC, with respect to the first, second and third fiscal quarters of the year.

A "publicly trading company" must be a publicly reporting company that makes the necessary filings of its annual and quarterly reports with the SEC.   Additionally, the company must satisfy the requirements for being listed on an exchange such as the New York Stock Exchange or the NASDAQ so that the company's shares can be bought and sold by public investors in a securities market.   In this case, the exchange that TCI wanted to list its shares on is called the "OTC Bulletin Board."

**B.   Agreed-Upon Facts**

The SEC and Mr. Poyner have agreed that the following facts are true.   This means that, in hearing the evidence in this case and in reaching your verdict, you must treat the following statements of facts as being true and proven.

The Children's Internet, or TCI, is a corporation that was known as DWC Installations until late 2002.   Nasser Hamedani is the chairman and chief executive officer of another corporation called

3

United States District Court

For the Northern District of California

Two Dog Net.  In late February, 2002, Nasser Hamedani signed a non-binding letter of intent on behalf of Two Dog Net to purchase DWC Installations' outstanding shares for $300,000.

On March 20, 2002, Two Dog Net paid an initial deposit of $50,000 towards the acquisition price of DWC Installations.  In July, 2002, a company named Shadrack Films acquired a controlling fifty-one percent ownership interest in the stock of DWC Installations through three payments totaling $150,000 that came from Two Dog Net.  The other forty-nine percent ownership interest was acquired in October, 2002 by "Nominees" selected by Nasser and Sholeh Hamedani, who is one of Nasser Hamedani's daughters and was the President of Two Dog Net.

Sholeh Hamedani owned the shares of Shadrack Films and became the president and chief financial officer of DWC Installations when Shadrack Films acquired control of that company during the summer of 2002.  The name of DWC Installations was then changed to The Children's Internet.  Sholeh Hamedani became the president of TCI. TCI filed its first Form SB-2 registration statement with the SEC in February, 2003.  The SEC declared TCI's registration statement to be effective in May, 2004.  TCI's shares were approved for listing on the OTC Bulletin Board in late December, 2004, and started trading in mid-February, 2005.

Mr. Poyner is a resident of Boca Raton, Florida.  He is the sole officer, director and shareholder of a Florida corporation called "Onyx Holdings."  He is also the sole officer, director and shareholder of a Florida corporation called "Onyx Securities." During 2002, the period covered by this action, Mr. Poyner was not

4

licensed by the National Association of Securities Dealers or registered with the SEC as a broker.  During the period covered by this action, Onyx Holdings and Onyx Securities were not registered with the SEC as brokers or dealers.

Mr. Poyner was not an officer or director of TCI.  He was not an officer or director of Two Dog Net.  He was not an officer or director of DWC Installations.  He was not an officer or director of Shadrack Films.

Mr. Poyner did not sell any of the TCI shares he owned until after TCI's registration statement became effective in May, 2004 and after TCI's shares began trading on the OTC Bulletin Board in February, 2005.  Mr. Poyner played no role in drafting, reviewing, editing, revising or commenting upon any registration statement or filing with the SEC whether by TCI, DWC Installations, or any other entity.

As I said, the parties have agreed that the facts I just described are true.  Now I will describe for you the disputed allegations that each party is making.

**C.   The SEC's Allegations**

The SEC alleges that Mr. Poyner illegally sold securities of TCI from January, 2002 until around the fall of 2002.  His sales were allegedly illegal because he was not registered as a broker with the SEC, which the SEC claims was required under the law. Additionally, Mr. Poyner is alleged to have participated in offering and selling shares to investors while the shares were not registered for sale with the SEC, which the SEC also alleges was required under the law.

5

United States District Court
For the Northern District of California

The SEC also alleges that Mr. Poyner sold TCI shares by making false statements to the investors and failing to tell them important information about their investment.  In particular, Mr. Poyner allegedly kept from investors information about where their money went and how much of it he personally received.

The SEC further alleges that Mr. Poyner made false representations to the investors about how quickly they would be able to sell their shares on a public securities exchange and make a profit.  The SEC claims that during the time period when Mr. Poyner was offering or selling the TCI shares, the process had not even begun for registering those TCI shares so that they could be sold on a securities market.  TCI did not have an effective registration statement for selling its shares until May, 2004 and TCI's shares did not begin trading in a public market until February, 2005.

**D.   Mr. Poyner's Allegations and Defenses**

Mr. Poyner denies the SEC's allegations and contends by way of his defense that he acted as a finder and a trader -- that is, a person who introduces parties to a transaction and who trades for his own account -- and not as a broker or dealer required to be registered.  Mr. Poyner further contends that he made no illegal sales of securities and that he made no false or misleading statements to investors.

**BURDEN OF PROOF**

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**WHAT IS EVIDENCE**

The evidence from which you are to decide what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which have been received into evidence; and

(3) any facts to which the lawyers have agreed.

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they will say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition some testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you

**United States District Court**
For the Northern District of California

7

United States District Court

For the Northern District of California

1    must follow it.

2        (4) Anything you see or hear when the Court is not in session

3    is not evidence.  You are to decide the case solely on the evidence

4    received at the trial.

5                    **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

6        Evidence may be direct or circumstantial.  Direct evidence is

7    direct proof of a fact, such as testimony by a witness about what

8    that witness personally saw or heard or did.  Circumstantial

9    evidence is proof of one or more facts from which you could find

10   another fact.  You should consider both kinds of evidence.  The law

11   makes no distinction between the weight to be given to either

12   direct or circumstantial evidence.  It is for you to decide how

13   much weight to give to any evidence.

14       By way of example, if you wake up in the morning and see that

15   the sidewalk is wet, you may find from that fact that it rained

16   during the night. However, other evidence, such as a turned on

17   garden hose, may provide a different explanation for the presence

18   of water on the sidewalk. Therefore, before you decide that a fact

19   has been proved by circumstantial evidence, you must consider all

20   the evidence in the light of reason, experience, and common sense.

21                        **RULING ON OBJECTIONS**

22       There are rules of evidence that control what can be received

23   into evidence.  When a lawyer asks a question or offers an exhibit

24   into evidence and a lawyer on the other side thinks that it is not

25   permitted by the rules of evidence, that lawyer may object.  If I

26   overrule the objection, the question may be answered or the exhibit

27   received.  If I sustain the objection, the question cannot be

28

                                    8

answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

### CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)  the opportunity and ability of the witness to see or hear or know the things testified to;

(2)  the witness's memory;

(3)  the witness's manner while testifying;

(4)  the witness's interest in the outcome of the case and any bias or prejudice;

(5)  whether other evidence contradicts the witness's testimony;

(6)  the reasonableness of the witness's testimony in light of all the evidence; and

(7)  any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily

9

depend on the number of witnesses who testify about it.

**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**FIFTH AMENDMENT PRIVILEGE**

During the trial of this case, you may hear former testimony by Mr. Poyner in which he refuses to answer certain questions based upon his Fifth Amendment privilege against self-incrimination. This privilege allows any witness in a criminal or civil case to remain silent so that their statements cannot be used against them.

Although entitled by the Fifth Amendment to remain silent, a party in a civil case would normally provide testimony in support of their claims and defenses, particularly if the testimony relates to a matter within the party's personal knowledge.  As the fact finders in this case, you are allowed to -- but not required to -- treat any refusal by Mr. Poyner to answer a question on Fifth Amendment grounds as creating an inference that if he had testified, his testimony would have been harmful to his defense. In deciding whether to draw such an adverse inference against Mr. Poyner for refusing to answer a question on Fifth Amendment grounds, you should consider the totality of the circumstances.

United States District Court

For the Northern District of California

**OVERVIEW OF APPLICABLE LAW**

I will now give you a brief overview of the law applicable to this case.

**I.   Selling Securities Without Being Registered as a Broker**

The SEC alleges that Mr. Poyner violated Section 15 of the Securities Exchange Act, which provides that a person engaged in business as a broker who uses the mails or another instrumentality of interstate commerce to effect any transactions in the sale of securities must be registered with the SEC as a broker.  A broker buys and sells securities for clients, usually for a commission.

In order to find in favor of the SEC and against Mr. Poyner for failing to register as a broker, you must be satisfied that the SEC has established, by a preponderance of the evidence, the following three elements:

First:  That Mr. Poyner was not registered with the SEC or any agency or entity with whom persons register as brokers.  It is not disputed that Mr. Poyner was not registered with the SEC as a broker during the time period relevant to this action, and thus you must take this element as having been proven.

Second:  That Mr. Poyner used, or caused to be used, an instrumentality of interstate commerce in an offer or sale of securities.  An instrumentality of interstate commerce includes postal mail, e-mail, telephone, telegraph, telefax, interstate highway system, internet and similar methods of communication and travel from one State to another within the United States.

Third:  That Mr. Poyner was engaged in the business of effecting transactions in securities for the accounts of others as

11

a "broker," and that Mr. Poyner effected transactions in TCI shares, or caused or attempted to cause others to purchase or sell TCI shares.  You may consider the following factors as indicating that Mr. Poyner regularly effected securities transactions so that he had a duty to register as a broker:

1.   Whether Mr. Poyner's compensation was in the form of commission payments (that is, a portion of the money raised), rather than an employee's salary or wage.

2.   Whether Mr. Poyner actively participated in locating investors to purchase TCI stock, or stock of other companies.

3.   Whether Mr. Poyner made recommendations to potential investors regarding the purchase of TCI stock.

4.   Whether Mr. Poyner solicited the purchase of the stock of other companies besides TCI.

5.   Whether Mr. Poyner was actively involved in negotiations between potential investors and TCI.

A person is not required to register as a securities broker if he buys or sells securities for his own account or in a fiduciary capacity, but not as a part of a regular business.  In addition, a person is not required to register as a securities broker if he acts only as a "finder."  A "finder" is a person who does not effect a securities transaction, but only brings together parties who may engage in one.

The SEC does not need to prove that Mr. Poyner was aware that he was violating the broker registration requirement.  It is no defense that Mr. Poyner did not know he was required to register.

12

## II.   Selling Unregistered Securities

The SEC's next claim is that Mr. Poyner illegally sold or offered to sell securities which were not registered with the SEC -- a violation of Section 5 of the Securities Act.  In order to prevail on this charge, the SEC must prove by a preponderance of the evidence the following three elements:

First:  That no registration statement was in effect as to the TCI shares that were being offered or sold at the time Mr. Poyner is alleged to have sold them.  It is not disputed that a registration statement had not been filed with the SEC at the time Mr. Poyner is alleged to have acted as a broker.  Therefore, you must take this element as having been proven.

Second:  That Mr. Poyner, directly or indirectly, sold or offered to sell TCI shares to investors.  The SEC need not prove that Mr. Poyner had direct contact with any of the investors.  All that is required for the SEC to prevail on this element is that you find that Mr. Poyner was a necessary participant or a substantial factor in the sale or offering of TCI shares.  Thus, if you find that Mr. Poyner employed or directed others to sell or offer to sell securities, or if you find that Mr. Poyner conceived of and planned the scheme by which the unregistered securities were offered or sold, then the SEC has satisfied this element.

Third:  That someone used an instrumentality of interstate commerce in connection with the sale, offer to sell, or delivery of the TCI shares.  As I explained to you earlier, an instrumentality of interstate commerce includes postal mail, e-mail, telephone, telegraph, telefax, interstate highway system, internet and similar

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

methods of communication and travel from one State to another within the United States.

You should note that, as was the case with the claim that Mr. Poyner failed to register as a broker, the SEC does not have to show that he acted with any particular state of mind.  All that is required for the SEC to prevail is that Mr. Poyner sold, offered, or delivered TCI shares and in so doing used interstate transportation or communication.  It is no defense that Mr. Poyner did not know he had to register the TCI shares or that he relied on the advice of a lawyer who told him that the shares did not need to be registered.

**III. Securities Fraud (Knowing or Reckless)**

The SEC alleges that Mr. Poyner committed securities fraud, in violation of Section 10(b) of the Securities Exchange Act and Section 17(a)(1) of the Securities Act, in connection with the sale of TCI shares to investors during the period of January, 2002 to September, 2002.  To prevail on this claim, the SEC must establish by a preponderance of the evidence the following four elements:

First:  That Mr. Poyner made, directly or indirectly, one or more false or misleading statements of material fact, or omitted to state material facts.

A misrepresentation is a statement of material fact that is false or misleading when it is made.  A statement may be misleading even if it is literally true, if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.

An omission is a failure to disclose a material fact that must

be disclosed to prevent other statements that are made from being misleading.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether or not to buy or sell that security.

An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed as having significantly altered the total mix of information he or she took into account in deciding whether to buy or sell the security.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

Second:  That the misrepresentations or omissions of material fact were made in connection with the sale of securities under Section 10(b), or the offer or sale of securities under Section 17(a)(1).  If you find that there was a relationship between the allegedly fraudulent conduct and the sale of TCI shares, then you should find that the statement or omission was made "in connection with" such a sale.  To prove a relationship, the SEC need only prove that the fraud "touched" upon the transaction involving the sale.

Third:  That Mr. Poyner made the misrepresentations or omissions of material facts knowingly or recklessly.  A person acts knowingly when he makes an untrue statement with the knowledge that the statement is false or with reckless disregard for whether the statement is true.  A person acts knowingly if he omits necessary

15

United States District Court

For the Northern District of California

information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading. "Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.

Fourth:  That an instrumentality of interstate commerce or a facility of a national securities exchange was used.  As I explained to you earlier, an instrumentality of interstate commerce includes postal mail, e-mail, telephone, telegraph, telefax, interstate highway system, internet and similar methods of communication and travel from one State to another within the United States.  It is not necessary that a misrepresentation or omission occur during the use of the instrumentality of interstate commerce.  All that is required is that such an instrumentality be used by someone during some phase of the transaction.

## IV.  Securities Fraud (Negligent)

The SEC also claims that Mr. Poyner is liable for a violation of Sections 17(a)(2) and (3) of the Securities Act.  This violation is similar to but not the same as the fraud claim I just described to you.  With respect to any misrepresentations or omissions, if you find that the SEC has established by a preponderance of the evidence all of the elements of fraud, except that Mr. Poyner did not act knowingly or recklessly, then you may still find that Mr. Poyner violated the Securities Act, so long as you find that he was negligent in making a misrepresentation or omission.

16

United States District Court

For the Northern District of California

1   Negligence is different from the states of mind of "knowledge"
2  and "recklessness." "Negligence" involves a lesser standard of
3  wrongful intent and culpable state of mind than the "knowledge" or
4  "recklessness" that is required to prove a violation of Section
5  10(b) of the Securities Exchange Act or Section 17(a)(1) of the
6  Securities Act. Negligence is the doing of some act which a
7  reasonably prudent person would not do, or the failure to do
8  something which a reasonably prudent person would do, when prompted
9  by considerations which ordinarily regulate the conduct of human
10  affairs. It is, in other words, the failure to use ordinary care
11  under the circumstances. Ordinary care is that care which
12  reasonably prudent persons exercise in the management of their own
13  affairs, in order to avoid injury to themselves or their property,
14  or the persons or property of others. Ordinary care is not an
15  absolute term, but a relative one. That is to say, in deciding
16  whether ordinary care was exercised in a given case, the conduct in
17  question must be viewed in the light of all the surrounding
18  circumstances, as shown by the evidence in the case.

19                        **CONDUCT OF THE JURY**

20     I will now say a few words about your conduct as jurors.

21     First, you are not to discuss this case with anyone, including
22  members of your family, people involved in the trial, or anyone
23  else; this includes discussing the case in internet chat rooms or
24  through internet "blogs," internet bulletin boards or e-mails. Nor
25  are you allowed to permit others to discuss the case with you. If
26  anyone approaches you and tries to talk to you about the case,
27  please let me know about it immediately;

28                                17

**United States District Court**
For the Northern District of California

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until

18

**United States District Court**
For the Northern District of California

you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

**OUTLINE OF TRIAL**

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

After opening statements, the Plaintiff SEC will present evidence.  After Plaintiff's counsel conducts a direct examination of a witness, counsel for Defendant may cross-examine the witness. During Plaintiff's presentation of evidence, the Court may, for efficiency reasons, require Defendant's counsel to conduct his examination of the witness following Plaintiff's examination.  When Plaintiff has concluded its presentation of evidence, Defendant may present additional evidence, and counsel for Plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.  After that, you will go to the jury room to deliberate on your verdict.  After you have reached your verdict, you will be excused.