IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>       Plaintiff,<br>  v.<br>CORT L. POYNER,<br>       Defendant.                         / | No. C 06-6003 CW<br><br>FINAL JURY<br>INSTRUCTIONS |

**DUTY OF THE JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case. A copy of these instructions will be sent with you to the jury room when you deliberate. You should discard the preliminary instructions; the final instructions control and you need not concern yourselves with differences between them and the preliminary instructions. You must not infer from these instructions or from anything I may have done or said that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all of the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you, whether you agree

with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## GENERAL BACKGROUND

The Plaintiff in this case is the United States Securities and Exchange Commission, or the SEC, an agency of the United States government, which Congress has authorized to bring civil actions to enforce the federal securities laws.  This is a civil trial, not a criminal trial.  The Defendant in this case is Cort L. Poyner.

A "security" is an investment of money in a commercial, financial or other business enterprise, be it a startup or an established company, with the expectation of profit or other gain produced by the efforts of others.  Some common types of securities are stocks, bonds, debentures, warrants, and investment contracts. In this case, the "security" involved is the common stock of The Children's Internet, or TCI.

A "publicly reporting company" is a company that files periodic reports on a quarterly and annual basis with the SEC.  A small business such as TCI must file a "Form 10-KSB" once a year following the end of the fiscal year for which the report is being filed.  In this case, TCI's fiscal year was the same as a calendar year and ran from January 1 to December 31.  A small business like TCI must also file a "Form 10-QSB" three times per year with the SEC, with respect to the first, second and third fiscal quarters of

2

the year.

A "publicly trading company" is a publicly reporting company that makes the necessary filings of its annual and quarterly reports with the SEC. Additionally, the company must satisfy the requirements for being listed on an exchange such as the New York Stock Exchange or the NASDAQ so that the company's shares can be bought and sold by public investors in a securities market. In this case, the exchange that TCI wanted to list its shares on is called the "OTC Bulletin Board."

A "Form 211" is a form that is approved by an exchange such as the OTC Bulletin Board that allows a particular company's stock to be listed for trading on that exchange.

A "restricted share" of stock is a share of stock with a legend on the back which limits the circumstances under which the stock can be sold.

**AGREED-UPON FACTS**

The SEC and Mr. Poyner have agreed that the following facts are true. This means that, in reaching your verdict, you must treat the following statements of facts as being true and proven.

The Children's Internet, or TCI, is a corporation that was known as DWC Installations until late 2002. Nasser Hamedani is the chairman and chief executive officer of another corporation called Two Dog Net. In late February, 2002, Nasser Hamedani signed a non-binding letter of intent on behalf of Two Dog Net to purchase DWC Installations' outstanding shares for $300,000.

On March 20, 2002, Two Dog Net paid an initial deposit of $50,000 towards the acquisition price of DWC Installations. In

3

July, 2002, a company named Shadrack Films acquired a controlling fifty-one percent ownership interest in the stock of DWC Installations through three payments totaling $150,000 that came from Two Dog Net. The other forty-nine percent ownership interest was acquired in October, 2002 by "Nominees" selected by Nasser and Sholeh Hamedani, who is one of Nasser Hamedani's daughters and was the President of Two Dog Net.

Sholeh Hamedani owned the shares of Shadrack Films and became the president and chief financial officer of DWC Installations when Shadrack Films acquired control of that company during the summer of 2002. The name of DWC Installations was then changed to The Children's Internet. Sholeh Hamedani became the president of TCI. TCI filed its first Form SB-2 registration statement with the SEC in February, 2003. The SEC declared TCI's registration statement to be effective in May, 2004. TCI's shares were approved for listing on the OTC Bulletin Board in late December, 2004, and started trading in mid-February, 2005.

Mr. Poyner is a resident of Boca Raton, Florida. He is the sole officer, director and shareholder of a Florida corporation called "Onyx Holdings." He is also the sole officer, director and shareholder of a Florida corporation called "Onyx Securities." During 2002, the period covered by this action, Mr. Poyner was not licensed by the National Association of Securities Dealers or registered with the SEC as a broker. During the period covered by this action, Onyx Holdings and Onyx Securities were not registered with the SEC as brokers or dealers.

Mr. Poyner was not an officer or director of TCI. He was not

4

an officer or director of Two Dog Net. He was not an officer or director of DWC Installations. He was not an officer or director of Shadrack Films.

Mr. Poyner did not sell any of the TCI shares he owned until after TCI's registration statement became effective in May, 2004 and after TCI's shares began trading on the OTC Bulletin Board in February, 2005. Mr. Poyner played no role in drafting, reviewing, editing, revising or commenting upon any registration statement or filing with the SEC whether by TCI, DWC Installations, or any other entity.

**DAMAGES**

The parties have agreed that, if you find Mr. Poyner liable on any of the claims the SEC has made, the Court will determine the damages or monetary penalties. Because this is a civil, not a criminal case, there is no prison or jail penalty.

**BURDEN OF PROOF**

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**WHAT IS EVIDENCE**

The evidence from which you are to decide what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which have been received into evidence; and

(3) any facts to which the lawyers have agreed.

5

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; where I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial

6

evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it is not permitted by the rules of evidence, that lawyer may have objected. If I overruled the objection, the witness was permitted to answer the question. If I sustained the objection, the witness was not permitted to answer the question. If I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

7

1  (1) the opportunity and ability of the witness to see or hear
2      or know the things testified to;
3  (2) the witness's memory;
4  (3) the witness's manner while testifying;
5  (4) the witness's interest in the outcome of the case and any
6      bias or prejudice;
7  (5) whether other evidence contradicts the witness's
8      testimony;
9  (6) the reasonableness of the witness's testimony in light of
10     all the evidence; and
11 (7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

## DEPOSITION TESTIMONY

When a person was unavailable to testify at trial, portions of the deposition of that person were used at the trial. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify. In the case of Mr. Poyner's investigative testimony, you did not see a video recording. Instead, portions of the deposition transcript were read aloud, with stand-ins reading the questions and answers. Do not place any significance on the behavior or tone of voice of the persons reading those questions and answers.

8

**FIFTH AMENDMENT PRIVILEGE**

You have heard testimony that Mr. Poyner gave earlier in which he refused to answer certain questions based upon his Fifth Amendment privilege against self-incrimination. This privilege allows any witness in a criminal or civil case to remain silent so that their statements cannot be used against them.

Although entitled by the Fifth Amendment to remain silent, a party in a civil case would normally provide testimony in support of their claims and defenses, particularly if the testimony relates to a matter within the party's personal knowledge. As the fact finders in this case, you are allowed to -- but not required to -- treat any refusal by Mr. Poyner to answer a question on Fifth Amendment grounds as creating an inference that if he had testified, his testimony would have been harmful to his defense. In deciding whether to draw such an adverse inference against Mr. Poyner for refusing to answer a question on Fifth Amendment grounds, you should consider the totality of the circumstances.

Specifically, in this case, Mr. Poyner was questioned again later in a videotaped deposition, which you also saw, and he answered the questions asked of him.

**EXPERT OPINION**

You have heard testimony from persons who, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's

9

education and experience, the reasons given for the opinion, and all the other evidence in the case.

**DEMONSTRATIVE EXHIBITS NOT IN EVIDENCE**

Certain demonstrative exhibits and displays not received into evidence have been shown to you to illustrate information brought out at trial. They are not themselves evidence or proof of any facts. Demonstratives and displays are only as good as the underlying evidence that supports them. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these demonstratives and determine the facts from the underlying evidence.

**OVERVIEW OF APPLICABLE LAW**

I will now explain the law that is applicable to this case.

**I. Selling Securities Without Being Registered as a Broker**

The SEC alleges that Mr. Poyner violated Section 15(a)(1) of the Securities Exchange Act, which provides that a person engaged in business as a broker who uses the mails or another instrumentality of interstate commerce to effect any transactions in the sale of securities must be registered with the SEC as a broker. The SEC's claim is that Mr. Poyner illegally sold securities of TCI from January, 2002 until around the fall of 2002, and that these sales were illegal because Mr. Poyner was not registered as a broker with the SEC, which the SEC claims he was required to be under the law.

In order to find in favor of the SEC and against Mr. Poyner for failing to register as a broker, you must be satisfied that the SEC has established, by a preponderance of the evidence, the

10

following three elements:

    <u>First</u>:  That Mr. Poyner was not registered with the SEC or any agency or entity with whom persons register as brokers.  It is not disputed that Mr. Poyner was not registered with the SEC as a broker during the time period relevant to this action, and thus you must take this element as having been proven.

    <u>Second</u>:  That Mr. Poyner used, or caused to be used, an instrumentality of interstate commerce in an offer or sale of securities.  An instrumentality of interstate commerce includes postal mail, e-mail, telephone, telegraph, telefax, interstate highway system, internet and similar methods of communication and travel from one State to another within the United States.

    <u>Third</u>:  That Mr. Poyner was engaged in the business of effecting transactions in securities for the accounts of others as a "broker," and that Mr. Poyner effected transactions in TCI shares, or caused or attempted to cause others to purchase or sell TCI shares.

    A broker buys and sells securities for clients, usually for a commission.  A person is not required to register as a securities broker if he acts only as a "finder."  A "finder" is a person who does not effect a securities transaction, but only brings together parties who may engage in one.  Mr. Poyner contends that he acted only as a finder in this case, not as a broker.

    You may consider the following factors to determine whether Mr. Poyner regularly effected securities transactions so that he had a duty to register as a broker, or if he instead was acting as a finder so that he did not have a duty to register as a broker:

1. Whether Mr. Poyner's compensation was in the form of commission payments (that is, a portion of the money raised), rather than an employee's salary or wage.
2. Whether Mr. Poyner actively participated in locating investors to purchase TCI stock, or stock of other companies.
3. Whether Mr. Poyner made recommendations to potential investors regarding the purchase of TCI stock.
4. Whether Mr. Poyner solicited the purchase of the stock of other companies besides TCI.
5. Whether Mr. Poyner was actively involved in negotiations between potential investors and TCI.

A person is not required to register as a securities broker if he buys or sells securities for his own account, but not as a part of a regular business.

The SEC does not need to prove that Mr. Poyner was aware that he was violating the broker registration requirement. It is no defense that Mr. Poyner did not know he was required to register.

**II. Selling Unregistered Securities**

The SEC's next claim is that Mr. Poyner illegally sold or offered to sell securities which were not registered with the SEC -- a violation of Section 5 of the Securities Act. In order to prevail on this charge, the SEC must prove by a preponderance of the evidence the following three elements:

<u>First:</u> That no registration statement was in effect as to the TCI shares that were being offered or sold at the time Mr. Poyner is alleged to have sold them. It is not disputed that a

12

registration statement had not been filed with the SEC at the time Mr. Poyner is alleged to have sold them. Therefore, you must take this element as having been proven.

<u>Second</u>: That Mr. Poyner, directly or indirectly, sold or offered to sell TCI shares to investors. The SEC need not prove that Mr. Poyner had direct contact with any of the investors or that he acted as a broker. All that is required for the SEC to prevail on this element is that you find that Mr. Poyner was a necessary participant or a substantial factor in the sale or offering of TCI shares. Thus, if you find that Mr. Poyner employed or directed others to sell or offer to sell securities, or if you find that Mr. Poyner conceived of and planned the scheme by which the unregistered securities were offered or sold, then the SEC has satisfied this element.

<u>Third</u>: That someone used an instrumentality of interstate commerce in connection with the sale, offer to sell, or delivery of the TCI shares. As I explained to you earlier, an instrumentality of interstate commerce includes postal mail, e-mail, telephone, telegraph, telefax, interstate highway system, internet and similar methods of communication and travel from one State to another within the United States.

You should note that, as was the case with the claim that Mr. Poyner failed to register as a broker, the SEC does not have to show that he acted with any particular state of mind. All that is required for the SEC to prevail is that Mr. Poyner sold, offered, or delivered TCI shares and in so doing used interstate transportation or communication. It is no defense that Mr. Poyner

13

did not know he had to register the TCI shares or that he relied on the advice of a lawyer who told him that the shares did not need to be registered.

**III. Securities Fraud (Knowing or Reckless)**

The SEC alleges that Mr. Poyner committed securities fraud, in violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act and Section 17(a)(1) of the Securities Act, in connection with the sale of TCI shares to investors during the period of January, 2002 to September, 2002.  The SEC alleges that Mr. Poyner failed to disclose to investors the amount of commission in cash and stock that he would receive on the sales.  The SEC further alleges that Mr. Poyner made false representations to the investors about how quickly they would be able to sell their shares on a public securities exchange and make a profit.  The SEC claims that during the time period when Mr. Poyner was offering or selling the TCI shares, the process had not even begun for registering those TCI shares so that they could be sold on a securities market. TCI did not have an effective registration statement for selling its shares until May, 2004, and TCI's shares did not begin trading in a public market until February, 2005.

To prevail on this claim of securities fraud, the SEC must establish by a preponderance of the evidence the following four elements:

First:  That Mr. Poyner made, directly or indirectly, one or more false or misleading statements of material fact, or omitted to state material facts.

A misrepresentation is a statement of material fact that is

14

false or misleading when it is made. A statement may be misleading even if it is literally true, if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.

An omission is a failure to disclose a material fact that must be disclosed to prevent other statements that are made from being misleading.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether or not to buy or sell that security.

An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed as having significantly altered the total mix of information he or she took into account in deciding whether to buy or sell the security.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

<u>Second</u>: That the misrepresentations or omissions of material fact were made in connection with the sale of securities under Section 10(b), or the offer or sale of securities under Section 17(a)(1). If you find that there was a relationship between the allegedly fraudulent conduct and the sale of TCI shares, then you should find that the statement or omission was made "in connection with" such a sale. To prove a relationship, the SEC need only prove that the fraud "touched" upon the transaction involving the sale. The SEC need not prove that Mr. Poyner was acting as a

15

broker for the sale.

<u>Third:</u>  That Mr. Poyner made the misrepresentations or omissions of material facts knowingly or recklessly.  A person acts knowingly when he makes an untrue statement with the knowledge that the statement is false or with reckless disregard for whether the statement is true.  A person acts knowingly if he omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.  "Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.

<u>Fourth:</u>  That an instrumentality of interstate commerce or a facility of a national securities exchange was used.  As I explained to you earlier, an instrumentality of interstate commerce includes postal mail, e-mail, telephone, telegraph, telefax, interstate highway system, internet and similar methods of communication and travel from one State to another within the United States.  It is not necessary that a misrepresentation or omission occur during the use of the instrumentality of interstate commerce.  All that is required is that such an instrumentality be used by someone during some phase of the transaction.

**IV.  Securities Fraud (Negligent)**

The SEC also claims that Mr. Poyner is liable for a violation of Sections 17(a)(2) and (3) of the Securities Act.  This violation is similar to but not the same as the fraud claim I just described

16

to you.  With respect to any misrepresentations or omissions, if you find that the SEC has established by a preponderance of the evidence all of the elements of fraud, <u>except</u> that Mr. Poyner did not act knowingly or recklessly, then you may still find that Mr. Poyner violated the Securities Act, so long as you find that he was negligent in making a misrepresentation or omission.

Negligence is different from the states of mind of "knowledge" and "recklessness."  "Negligence" involves a lesser standard of wrongful intent and culpable state of mind than the "knowledge" or "recklessness" that is required to prove a violation of Section 10(b) of the Securities Exchange Act or Section 17(a)(1) of the Securities Act.  Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, when prompted by considerations which ordinarily regulate the conduct of human affairs.  It is, in other words, the failure to use ordinary care under the circumstances.  Ordinary care is that care which reasonably prudent persons exercise in the management of their own affairs, in order to avoid injury to themselves or their property, or the persons or property of others.  Ordinary care is not an absolute term, but a relative one.  That is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in the light of all the surrounding circumstances, as shown by the evidence in the case.

## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member

of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your answer to the questions on the verdict form must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**USE OF NOTES**

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to

18

communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the Court.

**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the Court that you are ready to return to the courtroom.