IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

  v.

THE CHILDREN'S INTERNET, INC., et al.

    Defendants.

No. C 06-6003 CW

ORDER DENYING DEFENDANTS' MOTION FOR EVIDENTIARY HEARING (Docket No. 231) AND GRANTING IN PART PLAINTIFF'S CROSS-MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENTS (Docket No. 234)

    Defendants The Children's Internet, Inc. (TCI), Two Dog Net, Inc., Nasser Hamedani and Sholeh Hamedani move for an evidentiary hearing in connection with Plaintiff Securities and Exchange Commission's (SEC) motion for a determination of remedies. The SEC cross-moves to exclude certain evidence Defendants have submitted and arguments they have made in opposing the remedies motion. The matter was taken under submission on the papers. Having considered all of the papers submitted by the parties, the Court denies Defendants' motion and grants the SEC's cross-motion in part.

BACKGROUND

    The complaint charges Defendants with violating multiple provisions of the federal securities laws in connection with the sale of TCI securities. The parties reached an agreement that

obviated the need for a trial on the merits.  Pursuant to the agreement, Defendants agreed not to contest liability and consented to the Court conducting a hearing to determine the appropriate remedies for their violations.  Defendants agreed that, in the course of the remedies proceeding, they would be "precluded from arguing that [they] did not violate the federal securities laws as alleged in the Complaint" and that the "allegations of the Complaint shall be accepted as and deemed true by the Court."  See, e.g., Docket No. 143 (consent of Nasser Hamedani) at 2.

The SEC moved for a determination of remedies on May 1, 2008.  Despite the unequivocal language of the consents, in opposing the SEC's motion, Defendants submit evidence disputing the allegations in the complaint and argue that they did not violate the securities laws in various respects.  They characterize their assertions as "mitigating factors."

## DISCUSSION

Defendants may not, in connection with the remedies proceeding, submit evidence disputing any allegation in the complaint or argue that they did not violate the securities laws.  Non-liability is not appropriately asserted as a "mitigating factor" in a remedies proceeding that is premised on liability.  Defendants gave up their right to a jury trial on the issue of liability when they signed the consents.  It makes no difference that the planned sale of TCI, which would have made a remedies proceeding unnecessary, did not go through as planned; the consents were not made contingent on the sale.

Although these general principles should make it clear that

2

much of the material contained in Defendants' opposition is not appropriately considered in connection with the remedies proceeding, the Court will discuss the specific evidence that the parties have identified.

A.  Evidence Concerning Scienter

Defendants argue in their opposition to the SEC's remedies motion that they acted without any deliberate intention to defraud, in large part because they relied on the advice of their attorney. They argue, therefore, that the scienter element of the SEC's claims has not been satisfied. This amounts to contesting liability, which, as stated above, Defendants cannot do.

Because Defendants agreed not to argue that they did not violate the securities laws, they are precluded from arguing that they did not act with scienter. They have not shown that their conversations with counsel are relevant for any purpose other than negating scienter,[1] and thus, they are precluded from submitting evidence of reliance on counsel.

B.  Evidence Concerning the Use of Investor Funds

Defendants have offered evidence of how the funds they raised for TCI were spent, as well as evidence that such spending was in line with the expectations of investors. The complaint, however, details how the relevant funds were spent. It states that only

---

[1] To the extent Defendants offer evidence of their conversations with counsel to demonstrate that they reasonably concluded that they could sell unregistered TCI shares, the evidence is irrelevant. Liability for the sale of unregistered securities is imposed without regard for the defendant's state of mind, and thus the defendant's state of mind cannot be used to avoid disgorgement of the proceeds from such sales.

3

$395,000 of the $2.7 million that was raised through the sale of TCI shares between February, 2002 and December, 2004 was used to fund TCI's operations. With respect to the remaining $2.3 million, the complaint alleges:

> Nasser and Sholeh Hamedani transferred approximately $1.2 million to a checking account they used for personal expenses. From the $1.2 million transferred to the checking account, Nasser and Sholeh Hamedani used approximately $300,000 to pay Nasser Hamedani's gambling expenses; approximately $275,000 to make payments for new automobiles, including a Corvette and a Mercedes sedan, and for a down payment and mortgage payments on a personal residence they shared; approximately $250,000 to write checks made payable to various of their family members or friends, or to "cash" or as cash withdrawals; and approximately $75,000 for other family expenses, such as school tuition and utility bills. These uses were not disclosed to investors.
>
> Of the remaining $1.1 million collected from investors as of December 2004 but not diverted to the checking account used for personal expenses, Nasser and Sholeh Hamedani diverted the investor funds to, among [other] things, Two Dog Net and commission payments totaling approximately $365,000 to Perez and Poyner. In addition, Nasser and Sholeh Hamedani used approximately $150,000 to pay for the 51 percent interest in DWC . . . . These uses were also not disclosed to investors.

Compl. ¶¶ 35-36.

The complaint also discusses the $750,000 that was raised between December, 2004 and June, 2005 through the sale of what investors thought were TCI shares:

> Contrary to [Defendants'] representations, the shares purchased were not "an investment with TCI," but were rather sales of shares held in the name of Shadrack Films, the company that Sholeh Hamedani wholly owned and controlled. As a consequence, and undisclosed to investors, the money paid by investors was treated by Nasser and Sholeh Hamedani as their own money rather than capital for TCI.

Compl. ¶ 40.

Defendants may not offer evidence that disputes these

4

allegations or any other allegations in the complaint discussing how investors' money was spent or what investors' expectations were.  While at least some of the evidence submitted in opposition to the SEC's remedies motion appears to contradict these allegations, it is not clear that <u>all</u> of the evidence does so.  As long as Defendants do not dispute the allegations in the complaint or deny violating the securities laws, they may offer evidence of expenses to the extent those expenses are relevant to the issue of disgorgement.  The SEC may dispute the relevance of any such evidence in its reply.

     C.    Evidence Concerning Early Sale of TCI Shares By Soraiya Hamedani and Farzin Cigarchi

The complaint alleges that, once TCI stock became listed on the OTC Bulletin Board, Nasser and Sholeh Hamedani delayed "the issuance of stock certificates to investors who had paid for their shares of TCI months or years earlier."  Compl. ¶ 44.  At the same time, the Hamedanis allegedly arranged for their own shares to be available for immediate resale.  The complaint further alleges that, before Sholeh Hamedani made the stock certificates available to investors, she and Nasser Hamedani engaged in transactions with the purpose of enriching themselves:

> By approximately mid-March 2005, Sholeh Hamedani received from TCI's transfer agent share certificates representing shares issued in the names of investors not controlled by the defendants.  However, Sholeh Hamedani did not provide the investors the certificates until on or around April 29, 2005.  By that point, the quoted share price for TCI's stock had fallen by approximately 80 percent and was then trading in the same range at which many investors had originally purchased their shares, at approximately $2.00 per share.
>
> Beginning in approximately February 2005, Nasser Hamedani

5

>arranged for two brokerage accounts to be opened, one in the name of Soraiya Hamedani, Nasser Hamedani's daughter, and the other in the name of Nasser Hamedani's nephew, Farzin Cigarchi . . . . Within days of the initiation of the publicly-quoted market in February 2005, approximately 60,000 shares of TCI stock were deposited into Nasser Hamedani's daughter's brokerage account, which were then sold to the public immediately.  In total, more than 90,000 shares were sold from the account by approximately May 2005, netting Nasser Hamedani approximately $440,000.
>
>By early April 2005, the second account opened in the name of the nephew, Cigarchi, began to sell approximately 24,000 TCI shares deposited into that account, at a point when the quoted price ranged around $6.00 per share.  In total, approximately 830,000 TCI shares were sold from this account through approximately August 2005, netting Nasser Hamedani approximately $1.64 million.
>
>Of the more than $2 million generated by the sales of TCI shares from these accounts, approximately $1.6 million was delivered to Nasser Hamedani through checks and withdrawals from the brokerage accounts, while his relatives used the remaining approximately $400,000.

Compl. ¶¶ 45-48.

In opposing the SEC's remedies motion, Defendants assert that TCI's investors could have sold their stock before they received their stock certificates.  This contradicts the allegations in the complaint and is improper.  The complaint also alleges that the sale of TCI shares through the accounts of Soraiya Hamedani and Farzin Cigarchi were fraudulent and were undertaken to enrich Nasser and Sholeh Hamedani, and Defendants are precluded from arguing otherwise.  However, Defendants may introduce evidence showing that some of these stock sales took place after April 29, 2008, at which time the complaint alleges that outside investors had received their stock certificates and were able to sell their shares.  Such evidence is not necessarily inconsistent with the allegations in the complaint, and Defendants may argue from this

6

evidence that some of the proceeds should not be disgorged.

D. Evidence Concerning Amendments to the Securities Registration Regulations

In February, 2008, the SEC published a final rule affecting stock registration requirements. The SEC argues that the amendment is irrelevant, and that Defendants therefore may not refer to it in opposing its remedies motion. Defendants argue that the amendment "puts into serious question the Commission's stance that the TCI shares . . . needed registration." Defs.' Req. for Judicial Notice at 3. Defendants also appear to argue that, even if they were required to register the shares, the Court should consider as a mitigating factor the fact that they purportedly would not have been required to register the shares if the transactions at issue had taken place after the amendment.[2]

The Court finds that the amendment is not relevant to any issue to be decided on the SEC's remedies motion. Defendants may not rely on the amendment to dispute their liability for selling unregistered shares. Nor does the fact that such sales would purportedly be permissible if they were conducted today alter the Court's determination of the proper amount of disgorgement. For the purposes of the remedies motion, the Court must consider the sales as violating the securities laws at the time they were conducted, and thus proceeds from the sales are subject to disgorgement.

---

[2] The Court expresses no opinion as to the accuracy of Defendants' characterization of the post-amendment registration requirements.

7

CONCLUSION

For the foregoing reasons, the SEC's cross-motion to exclude certain evidence and arguments in connection with Defendants' opposition to its motion for a determination of remedies is GRANTED IN PART. The SEC shall file its reply by July 31, 2008. The remedies motion will be heard on August 14 at 2:00 p.m.

Defendants' motion for an evidentiary hearing is DENIED. If the Court determines, after considering the parties' submissions and hearing oral argument on the remedies motion, that an evidentiary hearing is necessary, a hearing will be scheduled.

IT IS SO ORDERED.

Dated: 7/25/08

CLAUDIA WILKEN
United States District Judge

8